**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**


AUSTIN FREDERICK                                    CIVIL ACTION

VERSUS                                              18-682-SDD-RLB

JAMES LEBLANC, ET AL.


<u>RULING</u>

This matter is before the Court on the *Motion to Dismiss Pursuant to F.R.C.P. Rule 12(c)*[1] by Defendants, the Louisiana Department of Public Safety and Corrections ("DOC"), James LeBlanc ("LeBlanc"), Angela Griffin ("Griffin"), Teresa Cooley ("Cooley"), Mario Lewis ("Lewis"), and D'Anna Lawton ("Lawton")(or, collectively, "Defendants"). Plaintiff, Austin Frederick ("Plaintiff") has filed an *Opposition* to this motion.[2]  For the following reasons, the Court finds that the Defendants' motion should be DENIED.

**I.      FACTUAL BACKGROUND**

This lawsuit arises out of yet another claim of overdetention of a prisoner.  In his *Amended Complaint*, Plaintiff alleges that, on September 16, 2016, he "began service a one-year sentence in the custody of the  DOC for possession of cocaine" pursuant to Jefferson Parish criminal case number 16-4867.[3]  Plaintiff further alleges that he "served approximately forty-percent of this sentence" before being released to DOC parole supervision on December 3, 2016.[4]  Plaintiff alleges he was subsequently arrested on

---

[1] Rec. Doc. No. 29.
[2] Rec. Doc. No. 37.
[3] Rec. Doc. No. 17, p. 8.
[4] *Id.*
Document Number: 60142

December 26, 2016, and given a 90-day sentence, for a technical parole violation, after which he was released back to parole supervision on March 22, 2017.[5]

Plaintiff remained on parole until May 26, 2017 when he "was arrested in Jefferson Parish and charged with possession of drug paraphernalia, resisting an officer, and possession of cocaine" pursuant to Jefferson Parish criminal case nos. 17-3574 and 17-3575.[6]  Plaintiff alleges that, on June 20, 2017, he "revoked his parole".[7]  Regarding these new criminal cases, Plaintiff alleges that, on September 15, 2017, the criminal court judge "sentenced Mr. Austin to time-served."[8] Plaintiff claims DOC should have released him on July 10, 2017, which Plaintiff alleges was the completion date for his one-year DOC sentence.[9] Instead, Plaintiff alleges that he was released from DOC custody on October 26, 2017.[10]

Plaintiff submits DOC reports demonstrating that he was to remain on parole only until July 16, 2017, the full-term date that his sentence for case 16-4867 from Jefferson Parish was set to expire;[11] yet, following Plaintiff's May 26, 2017 arrest and pre-trial incarceration at the Jefferson Parish Jail,[12] Plaintiff alleges Lewis and Lawton changed Plaintiff's full-term date to October 26, 2017[13] without any legal or statutory authority to do so. Thus, although Plaintiff claims he should have competed his one-year sentence for case no. 16-4867 on July 16, 2017, the DOC did not release him.[14]

---

[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.* at p. 10.
[9] *Id.* at p. 9.
[10] *Id.* at p. 10.
[11] Rec. Doc. No. 37-1, p. 1.
[12] Rec. Doc. No. 17, ¶ 29.
[13] *Id.* at ¶ 31; Rec. Doc. No. 37-1, p. 4.
[14] *Id.* at ¶ 34.
Document Number: 60142

Plaintiff contends that DOC's July 24, 2017 communication cited to pre-2010 language of La. R.S. 15:574.9 that was "inapplicable at the time of his revocation, and seemingly a possible justification for altering his release date."[15] Then, on September 15, 2017, Plaintiff pled guilty to the new charges he was facing in Jefferson Parish,[16] for which the judge sentenced him to time served.[17] Rather than properly releasing Plaintiff at this time, Plaintiff alleges the DOC continued to falsely imprison him until October 26, 2017.[18]

Plaintiff claims that, during the entirely of his incarceration at the Jefferson Parish Correctional Center and Winn Correctional Center, Defendant DOC employees never provided him with a master prison record indicating that his release date had been changed from July 16, 2017 to October 26, 2017.[19] As to exhaustion of remedies, Plaintiff alleges that, although he lacked the necessary information to articulate his overdetention claim, he nevertheless exhausted all administrative remedies available to him at the Jefferson Parish Detention Center and Winn Correctional Center.[20] But, Plaintiff contends, without a calculated release date and master prison record, his efforts were unsuccessful.[21]

Plaintiff points to a 2017 Louisiana Legislative Audit Report, which concluded that:

DOC does not have any policies, procedures, manuals, or standardized guidance that outlines the correct way to calculate release dates. This leads to inconsistent calculation methods. For example, we asked two DOC staff to calculate release dates on the same offender, and each staff used a different method to calculate the release date. The two results differed by 186 days.[22]

---

[15] Rec. Doc. No. 37, pp. 3-4 (citing Rec. Doc No. 37-1, p. 7).
[16] Rec. Doc. No. 17, ¶ 36.
[17] *Id.*
[18] *Id.* at ¶ 42.
[19] *Id.* at ¶ 35.
[20] *Id.* at ¶ 41.
[21] *Id.*
[22] *Id.* at ¶ 48.
Document Number: 60142

Plaintiff also notes that several overdetention lawsuits have been filed, demonstrating the commonality of this problem.[23]  Plaintiff alleges that, as Secretary of the DOC, Defendant LeBlanc "was well aware of the pending overdetention lawsuits, the Attorney General's statement, the Legislative Audit Report and the systemic and unconstitutional pattern of overdetaining prisoners" like Plaintiff.[24]  Plaintiff also maintains that, as the administrative program director supervising the pre-classification department housed at DOC headquarters in Baton Rouge, Griffin was well aware of this systemic pattern of overdetention.[25]  Nevertheless, Plaintiff alleges Defendants failed to take appropriate action to correct this problem at the DOC.[26]

Plaintiff originally filed suit in state court, and Defendants removed this matter to this federal court.  Plaintiff asserts federal constitutional claims pursuant to 42 U.S.C. § 1983 and various state law claims.  Defendants now move for a Rule 12(c) judgment on the pleadings, arguing that Plaintiff's claims are barred by *Heck v. Humphrey.*[27]  The individual Defendants sued in their individual capacities also assert the defense of qualified immunity.  Plaintiff opposes this motion.

## II.    LAW & ANALYSIS

### A.  Motion to Dismiss Under Rule 12(b)(6) and Rule 12(c)

According to Rule 12(c) of the Federal Rules of Civil Procedure: "After the pleadings are closed–but early enough not to delay trial–a party may move for judgment

---

[23] *Id.* at ¶ 50 (referencing four additional lawsuits litigating overdetention matters against the DOC); *see also Traweek v. Gusman, et al.*, 19-cv-1384 (M.D. La.); *Hicks v. LaDPSC, et al.*, 19-cv-108 (M.D. La.); *McNeal v. LaDPSC et al.*, 18-cv-736 (M.D. La.); *Thomas v. Gryder et al.*, 17-cv-1595 (M.D. La.).
[24] Rec. Doc. No. 37, p. 5 (citing Rec. Doc No. 17, ¶¶ 7, 47, 51).
[25] *Id.* at ¶¶ 16-17.
[26] *Id.* at ¶ 58.
[27] 512 U.S. 477 (1994).
Document Number: 60142

on the pleadings."[28] "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)."[29]

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[30] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[31] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[32] In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[33] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[34] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[35] In order to satisfy the plausibility standard, the plaintiff must show "more than

---

[28] Fed. R. Civ. P. 12(c).

[29] *Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 209 (5th Cir. 2009) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)).

[30] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).

[31] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

[32] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205.

[33] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations and brackets omitted)(hereinafter "*Twombly*").

[34] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal citations omitted)(hereinafter "*Iqbal*").

[35] *Twombly*, 550 U.S. at 556.

Document Number: 60142

a sheer possibility that the defendant has acted unlawfully."[36]  "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[37]  On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[38]  Rather, the inquiry is whether the allegations in the *Complaint* plausibly state a claim for relief.

### B. The *Heck v. Humphrey* Doctrine

Defendants contend the *Heck v. Humphrey* doctrine bars Plaintiff's claims because they challenge both the validity and duration of his confinement.  In *Heck*, the Supreme Court held that a convicted person cannot collect damages for an unconstitutional conviction or imprisonment under Section 1983 unless "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ..., or called into question by a federal court's issuance of a writ of habeas corpus."[39]  Such a complaint must be dismissed if a "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence."[40]  Plaintiff maintains that he does not, in any way, challenge his underlying conviction or sentence, and this *Heck* argument has been rejected by Louisiana district courts, including this Court. Plaintiff is correct.

This Court rejected the same arguments raised by the Defendants in *Thomas v. Gryder*.[41]  The Court explained:

---

[36] *Iqbal*, 556 U.S. at 678.
[37] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[38] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[39] 512 U.S. at 486-87.
[40] *Id.* at 487.
[41] 2019 WL 5790351 (M.D. La. Nov. 6, 2019).
Document Number: 60142

The "favorable termination" requirement of *Heck* prohibits a criminal defendant's collateral attack on the defendant's conviction or sentence.[42] Here, however, Plaintiff does not seek to collaterally attack either his conviction or his sentence. Instead, all parties agree that on January 23, 2013, Plaintiff pleaded guilty in Orleans Criminal District Court and was sentenced as follows: (1) Count 1: sexual malfeasance in prison – five years; (2) Count 2: sexual battery – two years; and (3) Count 3: second degree kidnapping – five years.[43] The parties further agree that Plaintiff's correct release date was June 5, 2015.[44] Nothing in the instant action would invalidate either Plaintiff's conviction or sentence,[45] and Defendants cite the Court to no cases in which the unique fact pattern at issue here was considered.[46] Accordingly, the Court finds that Plaintiff's claims are not *Heck*

---

[42] *Id.* at *5 (citing *Heck*, 512 U.S. at 484-485 ("This Court has long expressed similar concerns for finality and consistency and has generally declined to expand opportunities for collateral attack.")).

[43] *Id.* (citing R. Doc. 62-1, p. 1).

[44] *Id.* (citing *supra*, n. 22).

[45] *Id.* (citing *e.g., Chappelle v. Varano*, 4:11-cv-00304, 2013 WL 5876173, at * 13 (M.D. Pa. Oct. 30, 2013) (plaintiff's § 1983 action for damages where parole board recalculated plaintiff's maximum sentence to be July 14, 2009 and defendants released plaintiff on either July 30 or 31, 2009 was not barred by *Heck* because "the Plaintiff does not dispute the validity of his conviction or his corresponding sentence at all. The conflict centers on the amount of time he was held in excess of his valid conviction and sentence. The disputed period of confinement is both temporally and legally separate from the Plaintiff's actual conviction and sentence. A finding for Plaintiff under § 1983 based on the period he was held beyond his original sentence would not imply the invalidity of the conviction or sentence, and therefore does not trigger the application of the favorable termination rule.") (internal citation omitted); *Griffin v. Allegheny County Prison*, Civil Action No. 17-1580, 2018 WL 6413156, at * 4 (W.D. Pa. Nov. 5, 2018) (same)).

[46] *Id.* (citing R. Doc. 65, pp. 2-3, n. 10-12. Defendants cite cases in which a claimant was currently imprisoned and sought immediate release or damages based on alleged constitutional violations. Defendants also cite cases involving § 1983 actions by formerly incarcerated individuals based on alleged imprisonment longer than was proper where barred by *Heck*. *See, Whitehurst v. Reece*, Civil Action No. 1:06cv393, 2009 WL 2757203 (E.D. Tex. Aug. 26, 2009) (formerly incarcerated plaintiff sought damages based on allegation that he was imprisoned longer than he should have been because defendants took improper actions which prevented him from receiving credit towards his federal sentence for time he spent incarcerated in county jail); *Humphrey v. Stephens*, No. A-14-CA-231-LY, 2014 WL 1319188 (W.D. Tex. March 31, 2014) (former prisoner's 1983 action dismissed as *Heck*-barred where plaintiff alleged that defendants miscalculated his release date and thereby over-detained him by 14 days); *Carlisle v. Normand*, Civil Action No. 16-3767, 2017 WL 4918997 (E.D. La. Oct. 31, 2017) (plaintiffs challenged the manner in which drug court was conducted and alleged excessive sentences were imposed; "Plaintiffs allege that Drug Court violated their constitutional rights by imprisoning them without due process, in the form of probation sanctions, contempt convictions, and time spent waiting. An award of damages to compensate for either the confinement itself or the alleged violations of due process that led to the confinements would necessarily imply that the confinements were invalid. *Heck* requires Plaintiffs to assert the invalidity of the confinements elsewhere before suing for damages."). Plaintiff's suit here does not involve any challenge to his conviction or sentence (because all parties agree on Plaintiff's conviction and proper sentence). Instead, Plaintiff seeks damages for the time period after his conviction and sentence (i.e., the amount of time Plaintiff was held in excess of his valid conviction and sentence), a time period for which *Heck* is not implicated. *See, Heck*, 512 U.S. at 487 ("But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed...."). *See also, Traweek*, 2019 WL 5430590, at * 6 (finding no *Heck* bar where plaintiff challenged "neither his conviction nor the length of his sentence" and instead alleged constitutional violations based on "his jailers' failure to timely process his release following his court-ordered

Document Number: 60142

barred.[47]

The *Traweek* court reached the same conclusion:

> By seeking to impose the *Heck* procedural bar to Mr. Traweek's claims, the defendants emphasize form over substance, begin from a faulty assumption, and ignore a critical component of *Heck* that is absent here. If Mr. Traweek succeeds on the merits, neither his underlying conviction for aggravated battery nor his seven-month sentence will be impliedly invalidated. *See id.* at 486, 114 S.Ct. 2364 (the favorable termination rule does not bar a § 1983 suit when "the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff."). Here, Mr. Traweek challenges neither his conviction nor his sentence. He accepts both. Therefore, the reasoning underlying *Heck*'s favorable termination prerequisite is simply not implicated: it would be illogical to require Mr. Traweek to first seek to invalidate his conviction or sentence in order to proceed in this lawsuit. The constitutional violation he advances here is that he was imprisoned 20 days past his release date; he does not take issue with his criminal judgment of conviction or the sentence rendered, but, rather, challenges the constitutionality of the administration of his release after he had served his sentence. Mr. Traweek alleges that his jailers failed to timely release him once the legal basis to incarcerate him had expired by court order. The only conduct the factfinder will probe is that performed by jail officials in administering his release after his release date.
>
> Another Section of this Court has rejected Secretary LeBlanc's attempt to invoke *Heck* in a factually-similar overdetention context, *Grant v. Gusman*, 17-cv-02797, R. Doc. 46 (E.D. La. March 27, 2018)(Brown, C.J.). There, the plaintiff, who had served seven years in state custody, was arrested upon his release based on a warrant issued years earlier for a different crime predating the one for which he served the seven-year prison term. The plaintiff pled guilty and the state court sentenced him to "a one year sentence, with credit for time served for the seven years he had just served." *Id.* at 3. Like Mr. Traweek, an administrative logjam between OPSO and DOC caused the plaintiff to be detained an additional 27 days after his sentencing, notwithstanding the state trial court's order (and the judge's email directly to OPSO's attorney directing) that Grant's release be expedited. *Id.* at 3-5. In moving to dismiss Grant's § 1983 claims, Secretary LeBlanc also invoked *Heck*. Chief Judge Brown rejected the argument,

---

time-served judgment."), and at * 5 ("The constitutional violation he advances here is that he was imprisoned 20 days past his release date; he does not take issue with his criminal judgment or the sentence rendered, but, rather, challenges the constitutionality of the administration of his release after he had served his sentence.")).

[47] *Thomas v. Gryder*, 2019 WL 5790351, at *3-*4.

Document Number: 60142

noting "[p]laintiff does not argue that his conviction or sentence were invalid.... [H]e contends that DOC Defendants violated his constitutional rights by failing to release him from prison. Therefore, *Heck v. Humphrey* is not applicable to this case." *Id.* at 32. This reasoning applies equally to Mr. Traweek, who, like Grant, challenges neither his conviction nor the length of his court-ordered sentence; he simply alleges that the overdetention by his jailers' failure to timely process his release following his court-ordered time-served judgment exceeds constitutional bounds.

Mr. Traweek's lawsuit, if successful, will not demonstrate or imply the invalidity of any criminal judgment or court-imposed sentence. He simply alleges that the procedures and action (or inaction) that caused him to be incarcerated for 20 days longer than his criminal judgment permitted unconstitutionally deprived him of his right to due process. *Heck*'s procedural bar is patently inapplicable.[48]

More recently, this Court applied the same reasoning and analysis and rejected the *Heck v. Humphrey* bar argument in *Hicks v. Department of Public Safety & Corrections*,[49] another overdetention case. Based on the foregoing, the Court finds that *Heck v. Humphrey* does not bar Plaintiff's claims relating to his alleged overdetention. Defendants' motion is DENIED on this issue.

### C. Qualified Immunity

The individual Defendants have asserted the defense of qualified immunity for the individual capacity claims brought against them. In *Harlow v. Fitzgerald*, the United States Supreme Court established the principle that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[50] "When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the

---

[48] 2019 WL 5430590, at *5-*6 (internal footnotes omitted).
[49] 2020 WL 428116 (M.D. La. Jan. 27, 2020).
[50] 457 U.S. 800, 818 (1982).

Document Number: 60142

defense."[51]

A claim of qualified immunity requires the Court to engage in the well-established

two-step analysis developed by the Supreme Court in *Saucier v. Katz*.[52]  As stated by the

Fifth Circuit in the context of a motion for summary judgment:

> First, we determine whether, viewing the summary judgment evidence in
> the light most favorable to the plaintiff, the defendant violated the plaintiff's
> constitutional rights. *See, e.g., Tarver v. City of Edna*, 410 F.3d 745, 750
> (5th Cir. 2005); *McClendon v. City of Columbia*, 305 F.3d 314, 322–23 (5th
> Cir.2002) (*en banc*); *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir.
> 2001). If not, our analysis ends. If so, we next consider whether the
> defendant's actions were objectively unreasonable in light of clearly
> established law at the time of the conduct in question. *See, e.g., Tarver*,
> 410 F.3d at 750; *Glenn*, 242 F.3d at 312. To make this determination, the
> court applies an objective standard based on the viewpoint of a reasonable
> official in light of the information then available to the defendant and the law
> that was clearly established at the time of the defendant's actions. *See
> Glenn*, 242 F.3d at 312; *Goodson v. City of Corpus Christi*, 202 F.3d 730,
> 736 (5th Cir. 2000); *see also Tarver*, 410 F.3d at 750 ("If officers of
> reasonable competence could disagree as to whether the plaintiff's rights
> were violated, the officer's qualified immunity remains intact.").[53]

When the defense of qualified immunity is raised in a Rule 12(b)(6) motion, "it is

the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal

reasonableness'."[54]  The plaintiff must support his claim with "sufficient precision and

factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the

time of the alleged acts."[55]  When greater detail is required to address the defense of

qualified immunity, the Court may insist that a plaintiff file a reply pursuant to Federal Rule

[51] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*)).
[52] 533 U.S. 194 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 229 (2009). *See Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009).
[53] *Freeman v. Gore*, 483 F.3d 404, 410–11 (5th Cir. 2007).
[54] *McClendon*, 305 F.3d at 323 (quoting *Behrens v. Pelletier*, 516 U.S. 299 (1996)).
[55] *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir.1995) (*en banc*).
Document Number: 60142

of Civil Procedure 7(a) tailored to an answer pleading the defense of qualified immunity.[56]

"The district court need not allow any discovery unless it finds that plaintiff has supported

his claim with sufficient precision and factual specificity to raise a genuine issue as to the

illegality of defendant's conduct at the time of the alleged acts."[57]

Defendants make essentially the same *Heck* argument discussed above in

asserting their entitlement to qualified immunity.  Defendants also maintain that Plaintiff

has failed to allege that a clearly established constitutional right was violated.  The Court

disagrees.

The *Traweek* court explained the meaning of "clearly established":

> This is a "demanding standard," which requires "precedent [so] clear...that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *District of Columbia v. Wesby*, —— U.S. ——, 138 S. Ct. 577, 589, 199 L.Ed.2d 453 (2018)(citations omitted, emphasis added). "Clearly established" law is "settled law" that "place[s] the constitutionality of the officer's conduct 'beyond debate.'" *Id.* (citation omitted). Although the Supreme Court does not require "a case directly on point," the legal principle must be specific, not general, and either "controlling authority" has adopted the rule, or there is "a robust consensus of cases of persuasive authority" embracing it. *Id.* at 589-90 (citation omitted). Stated another way, "[a] [g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he [or she] is doing violates that right.'" *al-Kidd*, 563 U.S. at 741, 131 S.Ct. 2074 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). This demanding second prong thus ensures that "government officials [have] breathing room to make reasonable but mistaken judgments about open legal questions." *Id.* at 743, 131 S.Ct. 2074. Indeed, "the qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)(quoting *Malley v. Briggs*, 475 U.S. 335, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).[58]

---

[56] *Id.* at 1433–34.

[57] *Id.*

[58]  2019 WL 5430590, at *7 (M.D. La. Oct. 23, 2019).
Document Number: 60142

***

The Fourteenth Amendment forbids states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. "The touchstone of due process is protection of the individual against arbitrary action of government." *Jauch v. Choctaw Cty.*, 874 F.3d 425, 430 (5th Cir. 2017)(quoting *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). "The procedural due process analysis starts with one inquiry: whether the state has 'deprived the individual of a protected interest[.]'" *Id.* Quite obviously, the Supreme Court has recognized that the "loss of personal liberty through imprisonment" is sufficient to trigger due process protections. *Id.* (quoting *Turner v. Rogers*, 564 U.S. 431, 445, 131 S.Ct. 2507, 180 L.Ed.2d 452 (2011)).[59]

Mr. Traweek alleges that LeBlanc's failure to adopt safeguards despite knowing DOC's pattern of overdetaining inmates and Jones's direct failure to timely process his release despite knowing he was overdue to be released violated his right to timely release from custody. Because Mr. Traweek has a right to be timely released from custody, his over detention, or detention absent (or beyond the expiration of) legal process, violates an incarcerated person's right to due process. *See id.*[60]

The *Traweek* court also noted, based on Fifth Circuit precedent, that "[t]here is no dispute that an incarcerated person's right to timely release from custody is clearly established and was so, well before 2018 at the time that Traweek remained in custody despite the court order mandating his release."[61]  The court discussed the Fifth Circuit's decision in *Jauch v. Choctaw Cty.*,[62] wherein the Fifth Circuit determined that Jauch's 96-day detention without a hearing deprived her of liberty without legal or due process, and the Fifth Circuit further determined that this law had been clearly established in *Jones v. City of Jackson*, a case decided in February 2000.[63]  Thus, the *Jauch* court denied

---

[59] *Id.* at *8 (internal footnote omitted).
[60] *Id.*
[61] *Id.* (citation omitted).
[62] 874 F.3d 425, 430 (5th Cir. 2017).
[63] 203 F.3d 875 (5th Cir. 2000).
Document Number: 60142

qualified immunity to the sheriff in whose custody the plaintiff remained for 96 days.[64]

Having determined that "there is a clearly established right to timely release from prison,"[65] and accepting his allegations as true as required under Rule 12(b)(6), the court found that Traweek had plausibly alleged the violation of a constitutional right by the defendants.  The court also held that Traweek had alleged sufficient facts to overcome the defendants' qualified immunity defense at the pleadings stage.[66]   The court documented Traweek's specific allegations regarding the computation process applied to his particular case but also found that Traweek's allegations that LeBlanc and the DOC "have 'a well-documented pattern of overdetention'" overcame LeBlanc's defense:[67]

> LeBlanc's § 1983 individual capacity liability is predicated solely on his supervisory role as Secretary of DOC; there are no allegations that he affirmatively participated in the acts that caused Mr. Traweek's constitutional deprivation. Thus, LeBlanc is only liable under § 1983 if Mr. Traweek plausibly alleged that he implemented unconstitutional (or failed to implement) policies that causally resulted in his overdetention. Mr. Traweek contends that his pattern allegations overcome LeBlanc's assertion of qualified immunity and that another Section of this Court has determined that similar allegations suffice to allege a pattern of overdetention at the DOC of which LeBlanc was aware but nonetheless acted with deliberate indifference by failing to discipline or train employees or to implement any policy to correct the unconstitutional problem. *See Grant v. Gusman*, No. 17-2792, 2018 WL 3869494, at *10 (E.D. La. Aug. 14, 2018)(Brown, C.J.). The Court agrees. Mr. Traweek's allegations regarding DOC's pattern of overdetention and LeBlanc's deliberate failure to act or implement policies addressing the overdetention problem suffice to overcome LeBlanc's invocation of qualified immunity. Mr. Traweek alleges that the DOC's system of administrative processing, in practice, amounts to a policy of deliberate indifference. It is alleged that LeBlanc has known about the DOC's pattern of overdetention for years and yet has failed to adopt policies to correct this problem and that this failure to adopt training or disciplinary

---

[64] *Jauch*, 874 F.3d at 436 (finding that the sheriff's attempt to shift blame to immune judicial officers was misdirected given that sheriff's actions and decisions caused constitutional injury: "[e]ither Sheriff Halford is plainly incompetent, or he knowingly violated the law.").
[65] *Traweek*, 2019 WL 5430590, at *10 (quoting *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011)).
[66] *Id.* at *11.
[67] *Id.*

Document Number: 60142

policies to address it constitutes deliberate indifference to MR. Traweek's constitutional right to timely release. Mr. Traweek also alleges that, consistent with the known delays inherent in processing releases at DOC, it took DOC four days to even begin "computing" Traweek's time and then another day to effect his release. This suffices to overcome LeBlanc's invocation of qualified immunity at the pleadings stage.[68]

Applying the reasoning and analysis in *Traweek*, which involves a similar fact pattern and nearly identical defense assertions, the Court must deny Defendants' motion to dismiss based on qualified immunity.  Notably, unlike the jailer in *Traweek*, in the present case, Defendants make no argument that their actions were objectively reasonable or made in good faith.  Rather, Defendants focus solely on the argument that Plaintiff has failed to demonstrate the violation of a clearly established constitutional right, an argument that is clearly wrong under the wealth of Fifth Circuit jurisprudence discussed above.

Accordingly, the individual Defendants are not entitled to dismissal at this stage in the litigation based on the defense of qualified immunity.

## III.    CONCLUSION

For the reasons set forth above, Defendants' *Motion to Dismiss Pursuant to F.R.C.P. Rule 12(c)*[69] is DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>May 4, 2020</u>.

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[68] *Id.*
[69] Rec. Doc. No. 29.
Document Number: 60142