# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| | * | **CIVIL ACTION** |
| **AUSTIN FREDERICK** | * | |
| | * | **NO. 18-682 c/w 18-780-SDD-RLB** |
| **VERSUS** | * | |
| | * | **JUDGE SHELLY D. DICK** |
| **SECRETARY JAMES W. LEBLANC,** | * | |
| **ET AL** | * | **MAGISTRATE JUDGE** |
| | * | **RICHARD L. BOURGEOIS, JR** |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

The Defendants, State of Louisiana through the Department of Public Safety & Corrections ("DPSC"), James M. LeBlanc, Angela Griffin, Teresa Cooley, Mario Lewis, and D'Anna Lawton, respectfully request entry of summary judgment in their favor because there is no genuine issue of material fact for trial and they are entitled to judgment in their favor as a matter of law.

## I.    Statement of the Case

This lawsuit arises out of a former-prisoner's claim that his sentence was miscalculated and he should have been released from custody earlier than he was.[1] The Plaintiff alleges he was entitled to release on July 10, 2017, the alleged date of expiration of his sentence in Jefferson Parish No. 16-4867.[2]    However, the Plaintiff's release date was calculated to be October 26, 2017 and he was, in fact, released on that date.[3]    The Plaintiff alleges errors in application of state statutory law resulted in a miscalculation of the Plaintiff's release date.[4]

---

[1] Rec. Doc. 17
[2] *Id.* at ¶24.
[3] *Id*.
[4] *Id*. at ¶32.

The Plaintiff did not proceed through the Corrections Administrative Remedy Procedure (CARP).[5]  The attached affidavit of Rhonda Weldon proves the Plaintiff did not initiate an ARP or proceed to the second step of the process.[6]  The attached declaration of undersigned counsel proves the Plaintiff did not file a petition for judicial review in the 19th Judicial District Court challenging the computation of his sentence.[7]  As a result of Plaintiff's failure to proceed through CARP, the Plaintiff's sentence calculation was never reversed, modified, or otherwise set aside.

On July 11, 2018, the Plaintiff filed suit against the Defendants under 42 U.S.C. §1983 and the Louisiana Constitution claiming the defendants are all personally liable for violating the Plaintiff's purported due process right to be released from custody on July 10, 2017.  The Plaintiff also sued the defendants under various other state tort theories.  Despite the Plaintiff's shotgun pleading, which contained numerous counts arising from a single set of facts and attributed discrete acts to multiple defendants without explanation,[8] this Honorable Court denied Defendants' partial Motion to Dismiss the §1983 claims.[9]  No amended complaint or *Schultea* reply was ordered.[10]  Herein, the Defendants move for summary judgment on all claims in this lawsuit because there is

---

[5] La. R.S. 15:1171, *et seq*.

[6] Exhibit 1 – Affidavit of Rhonda Weldon

[7] Exhibit 2 – Declaration of Phyllis Glazer

[8] See *Copeland v. Axion Mortg. Grp. LLC*, No. 1:16CV159-HSO-JCG, 2016 WL 4250431, at *4 (S.D. Miss. Aug. 11, 2016):

> As opposed to the "short and plan statement" requirement contemplated by Rule 8, shotgun pleadings contain several counts within a complaint with each count " 'incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions.' " *Griffin v. HSBC Mortg. Servs., Inc.*, No. 4:14cv132-DMB-JMV, 2015 WL 4041657, at *5 (N.D. Miss. July 1, 2015) (quoting *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellog Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002)).  Another characteristic of shotgun pleadings is that they fail to distinguish between the actions of named defendants. *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (cited by *Griffin*, 2015 WL 4041657, at *5); *Sahlein v. Red Oak Capital, Inc.*, No. 3:13cv67-DMB-JMV, 2014 WL 3046477, at *4 (N.D. Miss. July 3, 2014) (dismissing a "shotgun pleading" when "numerous paragraphs in the complaint attribute discrete actions, such as the sending of a letter, or the public recording of a document, to all or multiple defendants without explaining the basis for such grouping or distinguishing between the relevant conduct of the named Defendants").

[9] Rec. Doc. 41

[10] See Rec. Doc. 41, pp. 10-11 (quoting *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995) (en banc)).

no genuine issue of material fact and all of the Defendants are entitled to judgment in their favor as a matter of law.

## II.    Summary Judgment Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[11] A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[12]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[13] If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.[14]

If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[15] All facts and inferences are construed in the light most favorable to the nonmoving party.[16] "[I]n order to meet his burden of proof, the party opposing a motion for summary judgment 'may not sit on its hands, complacently

---

[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).
[12] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson*, 477 U.S. at 252); *Hamilton*, 232 F.3d at 477.
[13] *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986))
[14] *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex*, 477 U.S. at 325).
[15] *Washburn*, 504 F.3d at 508.
[16] *Brumfield*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

relying' on the pleadings." [17] The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of his claim. [18]

### III.    Plaintiff's §1983 and state law claims must be dismissed because the calculation of his sentence has not been reversed, invalidated, or otherwise set aside.

This Honorable Court must accept the determination of DPSC that the Plaintiff was due for discharge from custody on October 26, 2017 because that determination has not been reversed, invalidated, or otherwise set aside.   The attached affidavit shows the Plaintiff did not file an Administrative Remedy Procedure grievance challenging his sentence computation. [19] Undersigned counsel, furthermore, attaches a declaration showing the records of the 19th Judicial District Court for the Parish of East Baton Rouge were checked and the Plaintiff did not file a Petition for Judicial Review of his sentence computation. [20] Therefore, it is undisputed that the Plaintiff did not file a Petition for Judicial Review.   Considering it is also undisputed that the Plaintiff was released on October 26, 2017, the Plaintiff cannot prove his rights under federal or state constitutional law were violated or that he is entitled to relief under other state laws.   The undisputed fact material to the Plaintiff's entire lawsuit is that his sentence calculation has not been reversed, invalidated, or otherwise set aside.

### A.  The prior ruling (rec. doc. 41) of this Honorable Court should not preclude the instant Motion.

This Honorable Court previously denied Defendants' 12(b)(6) Motion to Dismiss based on *Heck v. Humphrey.* [21] This Honorable Court found that *Heck* only bars §1983 suits that directly

---

[17] *Mitchell v. Hooper*, No. CV 19-398-SDD-RLB, 2019 WL 7546946, at *3 (M.D. La. Dec. 12, 2019), report and recommendation adopted, No. CV 19-398-SDD-RLB, 2020 WL 113356 (M.D. La. Jan. 9, 2020) (quoting *Weyant v. Acceptance Insurance Co.*, 917 F.2d 209, 212 (5th Cir. 1990)).
[18] *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).
[19] Exhibit 1 – Affidavit of Rhonda Weldon
[20] Exhibit 2 – Declaration of Phyllis Glazer
[21] *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)

challenge a conviction or sentence.[22]   This Honorable Court held that because the Plaintiff is not

challenging his convictions or the sentences imposed by the state courts, *Heck* does not apply.[23]

Rule 54(b) of the Federal Rules of Civil Procedure[24] authorizes this Honorable Court to reconsider

its prior ruling.  Fifth Circuit "precedent establishes that '[a] trial court [is] free to reconsider and

reverse [interlocutory orders] for any reason it deems sufficient, even in the absence of new

evidence or an intervening change or in clarification of the new law.'"[25]

The Ruling of this Honorable Court denying application of the *Heck* bar is contrary to

precedent of the Supreme Court and Fifth Circuit, which consistently applies *Heck* to §1983 suits

challenging sentence computations.  Additionally, the ruling of this Honorable Court did not

pertain to any of Plaintiff's state law claims.  This Honorable Court should revisit the holding

denying application of *Heck* in connection with the aforementioned precedent and additional

argument herein about governing state law.

The Defendants will briefly explain below why applicable precedent of the United States

Supreme Court and U.S. Fifth Circuit Court of Appeals supports reconsideration of this Honorable

Court's prior finding that *Heck* does not apply to bar the Plaintiff's §1983 claims in this case.

Nonetheless, even if this Honorable Court declines to revisit its ruling on *Heck*, this Court's prior

ruling did not address Plaintiff's state law claims.  Therefore, this Honorable Court should still

consider whether the Plaintiff's exclusive remedy for challenging his sentence computation was

through CARP.

---

[22] Rec. Doc. 41, p. 6, *et seq*.
[23] *Id*.
[24] Rule 54(b) states in pertinent part, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."
[25] *Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 677 F.3d 720, 727–28 (5th Cir. 2012) (quoting *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir.2010), footnote omitted).

**B.** ***Heck* bars the §1983 claims because the Plaintiff is unequivocally challenging the computation of the Plaintiff's underlying sentences**

In *Heck v. Humphrey*, the Supreme Court found that a §1983 suit cannot be brought if a finding in favor of the Plaintiff would necessarily imply the invalidity of a conviction or sentence.[26] Precedent of the Supreme Court and Fifth Circuit, which is followed by this District, establishes that *Heck* bars a §1983 claim in which the plaintiff challenges the computation of his sentence. The United States Supreme Court, in *Muhammad v. Close*, 540 U.S. 749, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004), held that the *Heck* favorable termination rule bars §1983 claims challenging "the State's calculation of time to be served in accordance with the underlying sentence."[27]

The Western District of Louisiana, which applies *Heck* consistently with the Supreme Court precedent mentioned above, explained:

> It may be that the sentence Plaintiff complains about has been completely served by this time. But *Heck* applies whether Plaintiff is complaining about a sentence he is still serving or one he has completed. In the Fifth Circuit, *Heck* applies even to prisoners who are no longer in custody and are no longer eligible for habeas relief. *Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000); *Black v. Hathaway*, 616 Fed. Appx. 650, 653 (5th Cir. 2015).
>
> In *Randell*, the plaintiff sought damages on a claim that he was not given proper sentence credit and served extra time. His claim was held to be barred by *Heck* even though he was no longer in custody and thus could not file a habeas petition. Not every circuit agrees with the *Randell* approach when the plaintiff is no longer in custody, but it is still applied in this circuit. *Black*, 616 Fed. Appx. at 653 n. 28; *Thomas v. Louisiana, Dep't of Soc. Servs.*, 406 Fed. Appx. 890, 898 n. 5 (5th Cir. 2010); *Bryant v. Louisiana Dep't of Pub. Safety & Corr.*, 2019 WL 5538054 (E.D. La. 2019). *See also Ahmadi v. Davis*, 806 Fed. Appx. 329 (5th Cir. 2020) (affirming *Heck* dismissal of claim where plaintiff "sought damages based on an allegedly unlawful period of confinement and an incorrect calculation of his date of discharge.").[28]

---

[26] Rec. Doc. 41, p. 6 (discussing *Heck* bar).

[27] *Muhammad*, 540 U.S. at 754-755.

[28] *Williams v. LeBlanc*, No. CV 18-CV-731, 2020 WL 4742837, at *3 (W.D. La. July 29, 2020), report and recommendation adopted, No. 18-CV-731, 2020 WL 4740485 (W.D. La. Aug. 14, 2020)

As explained by the Western District in *Williams, supra,* the Fifth Circuit similarly applies the *Heck* doctrine to §1983 suits challenging calculations of sentences.[29]  The judges of this District also follow the aforementioned precedent.[30]    This Honorable Court is among the judges of this District who have held that *Heck* bars claims like the Plaintiff's.[31]  This Honorable Court, in *London*, dismissed that Plaintiff's collateral attack on his sentence computation as legally frivolous.  Plaintiff Austin Frederick's lawsuit is legally indistinguishable from *London*'s suit.

"If an individual wants to challenge a conviction or sentence, the proper avenue for relief is criminal appeal, postconviction application, or other authorized collateral challenge—not an end-run through Section 1983."[32]  There can be no dispute that all of the Plaintiff's claims in this case depend on a finding that the Plaintiff's sentence was miscalculated.  This lawsuit is, in every respect, a direct challenge to the Department's calculation of the Plaintiff's sentence.   The precedent discussed above establishes that the Plaintiff is *barred* from filing a §1983 suit challenging his sentence computation until such time as the computation has been reversed, invalidated, or otherwise set aside. The Plaintiff does not allege and cannot show that "the calculation of his sentence has been reversed, invalidated, or otherwise set aside. Consequently, his suit for damages based on his allegedly unlawful confinement is barred by *Heck*."[33]

---

[29] See *McGrew v. Texas Bd. of Pardons & Paroles*, 47 F.3d 158, 161 (5th Cir. 1995); *Ahmadi v. Davis*, 806 F. App'x 327, 328 (5th Cir. 2020) (unpublished per curiam); *Newsome v. Texas Bd. of Pardon & Parole*, 124 F. App'x 256, 256 (5th Cir. 2005) (unpublished per curiam); *Hassler v. Carson Cty.*, 111 F. App'x 728, 729 (5th Cir. 2004)

[30] See e.g. *King v. Cain*, No. CIV.A. 10-604-BAJ, 2010 WL 4623962, at *1 (M.D. La. Oct. 6, 2010), report and recommendation adopted, No. CIV.A. 10-604-BAJ, 2010 WL 4622186 (M.D. La. Nov. 5, 2010) ("unless the plaintiff can demonstrate that a state court or other authorized tribunal has determined that his sentence has been improperly calculated, he has no damages claim against the defendants cognizable under § 1983.") (citing *Heck; McGrew*); *Blair v. Stalder*, No. CIV.A. 07-0836-C-M2, 2008 WL 482602, at *2 (M.D. La. Jan. 14, 2008) (dismissing claim as legally frivolous because it was barred by *Heck*).

[31] See e.g. *London v. Dep't of Corr.*, No. CIV.A. 14-362-SDD, 2014 WL 3563416, at *3 (M.D. La. July 18, 2014) (Dick, J. adopting the findings of the Magistrate Judge).

[32] *Williams v. LeBlanc*, No. CV 18-CV-731, 2020 WL 4742837, at *3 (W.D. La. July 29, 2020), report and recommendation adopted, No. 18-CV-731, 2020 WL 4740485 (W.D. La. Aug. 14, 2020).

[33] *Ahmadi*, 806 Fed. Appx. 327 (citing *Magee*, 912 F.3d at 822).

### C. Plaintiff abandoned his state law claims by failing to pursue them through CARP; all state law claims must be dismissed with prejudice.

The Plaintiff's state law claims are also barred.  "A prisoner alleging an error in time computation must pursue his claim through CARP, with appellate review first at the district court and then with [the First Circuit Court of Appeal]."[34]  Unless and until the prisoner's sentence computation is "corrected" through CARP, the prisoner cannot claim damages for or arising from any alleged error in the computation.[35]  The Plaintiff abandoned *all* of his state law claims by failing to pursue those claims through CARP.[36]  Therefore, all of the state law claims must be dismissed with prejudice.[37]

This Honorable Court has acknowledged the CARP procedures for reviewing sentence computations and found that federal district courts lack jurisdiction to "review, modify, or nullify final orders of state courts."[38]  It logically follows that, if this Honorable Court lacks jurisdiction to review a final order of the state court, this Court similarly lacks jurisdiction to review, modify, or nullify the underlying administrative decision that the inmate declined to appeal through the state courts. [39]

Furthermore, "'all complaints and grievances [by prisoners], including traditional tort claims seeking monetary relief, are subject to administrative procedures.'  However, whether a claim is ultimately subject to a full *de novo* review in the district court under the court's original

---

[34] *Madison v. Ward*, 2000-2842 (La. App. 1 Cir. 7/3/02), 825 So. 2d 1245, 1255.

[35] See e.g. *Stemley v. Goines*, 2006-1556 (La. App. 4 Cir. 4/11/07), 954 So. 2d 403, 404, writ denied, 2007-1280 (La. 4/18/08), 978 So. 2d 340.

[36] See La. R.S. 15:1172(C).

[37] *Id.*

[38] *London*, 2014 WL 3563416 (quoting *Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir.2000)).

[39] Accord *Stemley*, supra.  See also *Owens v. Stalder*, No. CIV.A. 08-768, 2015 WL 1047585, at *1 (W.D. La. Mar. 10, 2015), aff'd in part, appeal dismissed in part, 638 F. App'x 277 (5th Cir. 2016) (finding the state court's ruling on the plaintiff's sentence computation was binding on the federal court).

jurisdiction, is still dependent on the characterization of the claim."[40]   The Plaintiff's failure to initiate and complete the Corrections Administrative Remedy Procedure to challenge his sentence computation is fatal to all of his state law claims.   The Plaintiff abandoned *all* of his state law claims by failing to pursue those claims through CARP.[41]    Therefore, all of the state law claims must be dismissed with prejudice.[42]

### IV.    Plaintiff's §1983 claims against DPSC must be dismissed because DPSC is not a "person" capable of being sued under §1983.

The Plaintiff sues DPSC under 42 U.S.C. §1983.[43]   Those claims must be dismissed with prejudice because DPSC is not a "person" capable of being sued under §1983.

> "Section 1983 provides a private right of action for damages to individuals who are deprived of 'any rights, privileges, or immunities' protected by the Constitution or federal law by any 'person' acting under the color of state law." *Stotter v. Univ. of Texas at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007) (quoting 42 U.S.C. § 1983). "The Supreme Court has 'held that a State is not a 'person' against whom a § 1983 claim for money damages might be asserted.' " *Med. RX/Sys., P.L.L.C. v. Texas Dep't of State Health Servs.*, 633 F.App'x 607, 610 (5th Cir. 2016) (citing *Lapides*, 535 U.S. at 617, 122 S.Ct. 1640). "This rule extends to 'arms of the state,' and to a state's 'officials acting in their official capacities.' " *Id.* (citing *Howlett v. Rose*, 496 U.S. 356, 365, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)). Thus, Plaintiff's § 1983 claims are barred against Defendants in their official capacity as they are not considered "persons" within the meaning of 42 U.S.C. § 1983.[44]

Considering the foregoing well-established law, the Plaintiff's §1983 claims against DPSC must be dismissed with prejudice.

---

[40] *Gray v. State*, 2005-617 (La. App. 3 Cir. 2/15/06), 923 So. 2d 812, 816–17 (quoting *Wood v. Martin,* 37,856 (La. App. 2 Cir. 12/10/03), 862 So.2d 1057, 1060; citing La. R.S. 15:1172(B)).

[41] La. R.S. 15:1172(C).

[42] *Id.*

[43] Rec. Doc. 17, ¶¶55, 58.

[44] *Hicks v. Dep't of Pub. Safety & Corr.*, No. CV 19-108-SDD-RLB, 2020 WL 428116, at *5 (M.D. La. Jan. 27, 2020) (quoting *Meyers ex rel. Benzing v. Texas*, 454 F.3d 503 (5th Cir. 2006)).

## V.     The individual Defendants are entitled to qualified immunity from suit under §1983 and the Louisiana Constitution.

The Plaintiff sues all of the individual defendants under 42 U.S.C. §1983, for monetary relief only, claiming a Fourteenth Amendment due process violation.[45]  The Plaintiff also sues the Defendants under Article I, Section 2 of the Louisiana Constitution, which is Louisiana's due process clause.[46] "The Fourteenth Amendment of the United States Constitution provides that no state shall deprive any person of 'life, liberty, and property, except by due process of law.'"[47] "The Louisiana Constitution provides the same due process protections as that of the United States Constitution."[48] Correspondingly, the qualified immunity defense and its governing legal standards apply equally to both the federal and state due process claims.[49]

The Plaintiff also mentions the Eighth Amendment's prohibition of cruel and unusual punishment in the headings to Counts 1 and 2.[50]  Plaintiff's complaint contains no facts supporting an Eighth Amendment claim.  The conclusory allegations within Counts 1 and 2 also do not identify an Eighth Amendment claim.  Merely listing Constitutional provisions does not state a claim.[51]  If the Plaintiff intends to lodge an Eighth Amendment claim against any Defendant, the Defendants reserve their right to respond to such a statement from the Plaintiff because, at this time, the facts do not provide notice to any Defendant that an Eighth Amendment claim is being lodged against him.

---

[45] Rec. Doc. 17, ¶54-59
[46] *Id* at ¶60-63.
[47] *Cripps v. Louisiana Dep't of Agric. & Forestry*, 819 F.3d 221, 232 (5th Cir. 2016) (quoting U.S. Const. amend. XIV, § 1).
[48] *Id.* (citing *Progressive Sec. Ins. Co. v. Foster*, 711 So.2d 675, 688 (La.1998)) ("[O]ur due process guarantee in La. Const. Art. I, § 2 does not vary from the Due Process Clause of the Fourteenth Amendment to the United States Constitution.").
[49] *Burge v. Par. of St. Tammany*, 187 F.3d 452, 482 (5th Cir. 1999) (quoting *Moresi v. Department of Wildlife and Fisheries,* 567 So.2d 1081, 1093 (La.1990)) (holding "the same factors that compelled the United States Supreme Court to recognize a qualified good faith immunity for state officers under § 1983 require us to recognize a similar immunity for them under any action arising from the state constitution.")
[50] Rec. Doc. 17, ¶54, ¶57.
[51] See *Jones v. United States Postal Serv.*, 690 F. App'x 147, 148 (5th Cir. 2017).

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[52] "Qualified immunity balances two important interests-- the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[53]

Qualified immunity shields state officials from money damages unless a plaintiff pleads and ultimately proves "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[54] "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense."[55] This Honorable Court may consider either prong to begin its analysis.[56] If either prong is resolved in favor of the defendant, the defendant is entitled to qualified immunity. The ultimate conclusion that the defendant is not entitled to qualified immunity "mandates a full *Saucier* inquiry."[57]

### A. Plaintiff's right to release from custody was not clearly established prior to October 26, 2017.

Generally, a prisoner has a constitutional right to "timely release" from prison.[58] The mere well-known *existence* of a constitutional right does not make that right "clearly established" for purposes of the qualified immunity defense. The Supreme Court has "repeatedly" implored lower

---

[52] *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) *(quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

[53] *Id*.

[54] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

[55] *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir.2002) (en banc)).

[56] *Id* (citing *Pearson*, 555 U.S. at 236, 129 S.Ct. at 818).

[57] *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009).

[58] *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).

courts "not to define clearly established law at a high level of generality."[59] The purely legal inquiry into whether a constitutional right is clearly established for purposes of the qualified immunity defense "must be undertaken in light of the specific context of the case, not as a broad general proposition."[60]

The Fifth Circuit explained that, in circumstances similar to this case, a prisoner's right to release from custody on a particular date is not clearly established until a court holds that an error was made in the sentence computation and orders the error be corrected.[61] In *Nelson*, the Court explained:

> To bring a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must first identify a protected liberty interest and then prove that governmental action resulted in a deprivation of that interest. *San Jacinto Sav. & Loan v. Kacal,* 928 F.2d 697, 700 (5th Cir.1991). Nelson had a state-created liberty interest in receiving credit for time served because the state court determined that state law required that he be given such credit. *See Sandin v. Conner,* 515 U.S. 472, 483-84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (States may create liberty interests which are protected by the Due Process Clause). That interest was indeed deprived by the erroneous decision of the defendants. Nelson was therefore entitled to the protections of procedural due process, which he received in the form of the administrative review procedures. *See Thompson v. Cockrell,* 263 F.3d 423 (5th Cir. Aug. 23, 2001, No. 00-40820), 263 F.3d 423, 2001 WL 958905 at *1 (only those state-created liberty interests that inevitably affect the duration of a sentence qualify for constitutional protection).
>
> However, that right was not clearly established until the state court declared it. At the time the defendants made their erroneous interpretation of the law, Nelson had no clearly established liberty interest in the defendants' interpreting state law correctly. Nelson received his right to procedural due process when the state court corrected the defendants' error and ordered that Nelson be credited with the time served.[62]

---

[59] *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011)).

[60] *Id.* (internal quotation marks omitted).

[61] *Nelson v. Stalder*, 31 F. App'x 836 (5th Cir. 2002).

[62] *Nelson*, 31 F. App'x 836.

This Honorable Court already recognized that Plaintiff's claim is subject to a procedural due process analysis.[63]

The Plaintiff claims he was entitled to release from custody on July 10, 2017.[64]  The Plaintiff's alleged right to release from custody was not clearly established on July 10, 2017.  The Plaintiff did not present his complaint about his sentence computation to the state court.[65]  Thus, no state court has held an error was made in Plaintiff's sentence computation, and no correction was ordered.  The undisputed facts are that the Plaintiff's release date was determined to be October 26, 2017, and that the Plaintiff was released from custody on that date.  Thus, the Plaintiff fails to meet his burden of proving he had a clearly established constitutional right to release from custody before October 26, 2017, and that each defendant violated that clearly established right.

Furthermore, because the Plaintiff failed to show his constitutional right was clearly established or that any constitutional right was violated, he utterly fails to show that each individual defendant committed conduct that was objectively unreasonable in light of clearly established law.

### B. No defendant's conduct was objectively unreasonable in light of clearly established law.

An official's conduct violates clearly established law where, "at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[66]  "[Q]ualified immunity claims should be addressed separately for each individual defendant."[67]

---

[63] Rec. Doc. 41, p. 12 (quoting *Traweek v. Gusman*, 19-cv-1384, 2019 WL 5430590 (E.D. La. 10/23/19)(Feldman, J. presiding), quoting *Jauch v. Choctaw Cty.*, 874 F.3d 425, 430 (5th Cir. 2017)).

[64] Rec. Doc. 17, ¶9.

[65] See Exhibit 2 – Declaration of Phyllis Glazer

[66]  *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011).

[67] *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 731 (5th Cir.), cert. denied sub nom. *City of Fort Worth, Tex. v. Darden*, 139 S. Ct. 69, 202 L. Ed. 2d 23 (2018) (quoting *Kitchen v. Dall. Cty.*, 759 F.3d 468, 480 (5th Cir. 2014) (quoting *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005)), *abrogated on other grounds by Kingsley v. Hendrickson*, —— U.S. ——, 135 S.Ct. 2466, 2473, 192 L.Ed.2d 416 (2015); *Meadours v. Ermel*, 483 F.3d 417, 421 (5th Cir. 2007)))

When evaluating a Motion for Summary Judgment based on qualified immunity, this Honorable Court must make two determinations: "first, whether 'a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law,' and second, whether 'a genuine issue of fact exists regarding whether the defendant(s) did, in fact, engage in such conduct.'"[68]

> [T]he usual summary judgment burden of proof is altered in the case of a qualified immunity defense. An officer need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the officer's allegedly wrongful conduct violated clearly established law. The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct.[69]

The Plaintiff cannot meet his burden of demonstrating there are genuine issues of material fact by "complacently relying" on the pleadings.[70]

### 1. Lewis and Lawton

Both Defendants Lewis and Lawton are sued as subordinate officials[71] who allegedly both had the job of calculating the Plaintiff's discharge date.[72] The Plaintiff alleges "Defendants Lewis and Lawton recalculated Mr. Austin's release date on several occasions between his June 20, 2017 [parole] revocation and his October 26, 2017 release from prison."[73]  In addition to revocation of his parole, which obviously resulted in the new calculation of a discharge date, the Plaintiff was sentenced on additional felony charges on September 15, 2017.[74]  Conviction and sentencing on

---

[68] *Wernecke v. Garcia*, 591 F.3d 386, 391 (5th Cir. 2009) (quoting *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir.2004)).
[69] *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir.2001) (internal citations omitted)).
[70] *Collins v. Stalder*, No. CV 06-0163-A-M2, 2008 WL 11426778, at *2 (M.D. La. Feb. 20, 2008) (quoting *Weyant v. Acceptance Ins. Co.*, 917 F.2d 209 (5th Cir. 1990)).
[71] Rec. Doc. 17, ¶18.
[72] *Id* at ¶19-20.
[73] *Id.* at ¶31.
[74] Rec. Doc. 17, ¶36.

new felony charges would also, obviously, result in a new discharge computation.  The Plaintiff's vague complaint that his sentence was recalculated "on several occasions" following his parole revocation and recommitment to DPSC custody does not identify any objectively unreasonable conduct.

The material issue is <u>not</u> whether Lewis or Lawton unreasonably performed sentence computations based on Plaintiff's parole revocation and new convictions.  The material issue is whether Lewis or Lawton committed objectively unreasonable conduct when performing a time calculation on the Plaintiff's sentence which determined Plaintiff's discharge date was October 26, 2017.

Plaintiff claims Lewis and Lawton violated state law by failing to give the Plaintiff credit for 65 days towards completion of his parole between March 22, 2017 and May 30, 2017, during which the Plaintiff was on parole, not in prison. [75]   Additionally, the Plaintiff claims Lewis and Lawton violated state law by failing to credit the Plaintiff for the time served in prison between May 26, 2017 and the revocation date of June 20, 2017. [76]  The Plaintiff alleges these supposed violations of state law demonstrate "intentional and/or negligent disregard of his civil and statutory rights."[77]  The Plaintiff alleges La. R.S. 15:574.9 (2017) is the state law that was supposedly violated by Defendants Lewis and Lawton.[78]

Preliminarily, "negligent inaction by a jail officer does not violate the due process rights of a person lawfully held in custody of the State." [79]  To the extent the Plaintiff is claiming the

---

[75] Rec. Doc. 17 at ¶32.
[76] *Id.* at ¶33.
[77] *Id.*.
[78] Rec. Doc. 41, p. 3.
[79] <u>Hare v. City of Corinth, Miss.</u>, 74 F.3d 633, 645 (5th Cir. 1996)

actions of Lewis and Lawton were negligent, they are entitled to qualified immunity and to dismissal of the §1983 and Louisiana Constitutional claims against them with prejudice.

Regarding the contention that the Plaintiff was entitled to credit "for 65 days of good behavior" for the time period he was out of jail and on parole committing new felony offenses, pursuant to La. R.S. 15:571.5, he forfeited his diminution of sentence credit by violating and then self-revoking his parole.[80]  The Plaintiff does not allege and cannot prove either Lewis or Lawton were objectively unreasonable by calculating the Plaintiff's sentence in light of the forfeiture of his good time credit pursuant to La. R.S. 15:571.5.

This Honorable Court recognized the application of §15:571.5 and its forfeiture of good time credits provision in *London v. Department of Corrections*, 2014 WL 3563416 which was a suit brought under §1983 by a former prisoner claiming the Department miscalculated his release date.  This Honorable Court entered judgment dismissing the *London* suit as frivolous.

Regarding the contention that the Plaintiff was entitled to credit for time served between his arrest on new felony charges and his revocation date of June 20, 2017, "[u]nder La. R.S. 15:574.9(E), petitioner was not entitled to jail credit for time he spent in jail on a new felony charge that was not attributable to him being held in custody for a parole violation."[81]  The Plaintiff does not allege and cannot prove the Plaintiff was unreasonably denied jail credits for the time period he was in jail awaiting trial on new felony charges before his parole was revoked.

In addition to the foregoing apparent misapplication of state statutes by the Plaintiff, to hold either Defendant Lawson or Lewis personally liable under 42 U.S.C. §1983 for alleged misapplication of Louisiana law, the Plaintiff must cite some case decided prior to the actions in

---

[80] See *Sweeney v. Louisiana Dep't of Corr.*, No. CIV.A. 09-0324, 2009 WL 1674644, at *2 (W.D. La. June 15, 2009) (analyzing §15:571.5 and citing *Bancroft v. Louisiana Department of Corrections*, 635 So.2d 738 (La. App. 1st Cir.1994)).
[81] *Williams v. Louisiana Dep't of Pub. Safety & Corr.*, 2015-0967 (La. App. 1 Cir. 2/29/16).

question, that supports the Plaintiff's interpretation of the statutory provisions at issue.[82]    The Plaintiff cannot succeed because, as shown above, Louisiana jurisprudence does not support the Plaintiff's position.

### 2. LeBlanc/Griffin/Cooley

The Plaintiff claims Defendants LeBlanc, Griffin, and Cooley are all liable for his alleged unconstitutional imprisonment because they were *both* personally involved in the alleged imprisonment and because, as supervisory officials and policymakers, they are liable for failing to prevent the alleged over-detention.  Both of those claims require the Plaintiff to prove LeBlanc, Griffin, and Cooley acted with deliberate indifference to his constitutional rights.[83]

### i. *Personal involvement claims*

To hold Defendants LeBlanc, Griffin, and Cooley liable for their alleged personal involvement in Plaintiff's over-detention, the Plaintiff must prove each of them was "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and 'he must also draw the inference.'"[84] "In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."[85]

Here, the Plaintiff cannot meet his burden of proving that each Defendant had the requisite personal knowledge of Plaintiff's detention, sentence computation, or alleged over-detention to subject him or her to personal liability for a due process violation.

---

[82] See e.g. *Owens v. Stalder*, 638 Fed. Appx. 277 (5th Cir. 2016) (unpublished per curiam).
[83] *Porter*, 659 F.3d at 446.
[84] *Ball v. LeBlanc*, 792 F.3d 584, 594 (5th Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994)).
[85] *Farmer*, 511 U.S. at 844.

The Plaintiff alleges he and his family "reached out" to LeBlanc, Griffin and Cooley between September and October, 2017, and that the Plaintiff "personally wrote letters to Defendant DOC officials through the administrative remedies [sic] procedure, seeking to be processed out of custody."[86]  There is no evidence of "outreach".  Additionally, the attached Affidavit of Rhonda Weldon proves that, even if the Plaintiff submitted an ARP at the prison level, the ARP did not make its way to the second step.  There is, therefore, no genuine issue of material fact about whether LeBlanc, Griffin, or Cooley, who are all undisputedly employed at DPSC headquarters, received "notice" through the ARP process, of the Plaintiff's challenge to his sentence calculation. Furthermore, "a request for administrative relief cannot alone prove deliberate indifference. A request for administrative relief is at best only circumstantial evidence that a prison official is aware of facts from which he can deduce a risk of harm; it is not even particularly strong evidence of that."[87]

Furthermore, the Fifth Circuit has held that supervisory officials who actually receive complaints from inmates are not automatically subjected to personal liability under §1983 for failing to resolve the inmates' complaints to their satisfaction.[88]

The Plaintiff also alleges LeBlanc "was responsible for ensuring that Defendants Lewis' and Lawton's calculation of Mr. Austin's release date from prison was completed constitutionally and accurately."[89] That is purely a claim of vicarious liability in the absence of *any* facts or evidence showing LeBlanc was personally involved in the computation of prisoner sentences.

---

[86] Rec. Doc. 17, ¶41.
[87] *Ball v. LeBlanc*, 792 F.3d 584, 595 (5th Cir. 2015)
[88] *Johnson v. Johnson*, 385 F.3d 503, 526 (5th Cir. 2004).
[89] Rec. Doc. 17, ¶31.

Considering the foregoing, there is no genuine issue of material fact for trial regarding the supposed personal involvement of Defendants LeBlanc, Griffin, and Cooley and they are each entitled to qualified immunity from suit.

ii.    *Supervisory liability claims*

The Plaintiff sues Secretary LeBlanc as a policymaker and "supervisor" of subordinate officials. [90] Defendants Griffin and Cooley are also sued as supervisors.[91] "In a § 1983 suit […]— where masters do not answer for the torts of their servants—the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."[92]

The Plaintiff claims "Mr. Frederick's over detention is also directly related to Defendants LeBlanc, Griffin, and Cooley's failure to constitutionally supervise and train their subordinates in proper procedures in determining the release dates for DOC inmates like Mr. Frederick."[93] Plaintiff similarly claims DOC, LeBlanc and Griffin had an "unconstitutional policy, pattern and practice of over detaining inmates in their custody and control past the terms of their criminal sentences."[94]

"In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates."[95] Deliberate indifference, "is a stringent standard of fault, requiring proof that a

---

[90] See Rec. Doc. 17, ¶11.
[91] *Id*. at ¶17-18.
[92] *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).
[93] *Id* at ¶44
[94] *Id* at ¶46
[95] *Pena v. City of Rio Grande City*, 879 F.3d 613, 620 (5th Cir. 2018) (citing *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (internal quotation marks and citation omitted, alterations in original)).

municipal actor disregarded a known or obvious consequence of his action."[96] The Plaintiff must prove each Defendant had actual or constructive notice that *a particular shortcoming in the policy* causes employees to violate citizens' constitutional rights.[97] Anything less would result in *de facto respondeat superior liability* under § 1983.[98] The Fifth Circuit has explained, "we have on several occasions reversed a district court's denial of qualified immunity, persuaded that support was lacking for a conclusion of deliberate indifference on the part of a supervisor."[99]

The Plaintiff must show "a pattern of <u>similar</u> constitutional violations" to demonstrate the requisite knowledge prong of deliberate indifference.[100] "Proof of a single instance, rather than a pattern of similar violations, normally will not sustain a plaintiff's claims that such a lack of training or supervision caused a violation of [his] constitutional rights."[101] A pattern requires "similarity, specificity, and sufficiently numerous prior incidents."[102] Whether the Plaintiff has sufficiently proven a "pattern of similar constitutional violations" to satisfy that element of the deliberate indifference standard is a <u>legal question</u>.[103]

"[T]he Supreme Court in *Connick* required that only very similar violations could jointly form a pattern."[104] In *Connick,* an innocent man sued the Orleans Parish District Attorney's Office under §1983 claiming the District Attorney failed to train the Assistant District Attorneys in their

---

[96] *Bohannan v. Doe,* 527 Fed.Appx. 283 (5th Cir.2013). citing *Connick v. Thompson,* U.S., 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011).

[97] *Id.*

[98] *Id.; see also Walker v. Upshaw,* 515 Fed.Appx. 334, 338–40 (5th Cir.2013) (per curiam) (unpublished) ("Supervisory officials may not be held liable under § 1983 for the actions of their subordinates under any theory of vicarious liability.").

[99] *Estate of Davis,* 406 F.3d at 381 (citations omitted)).

[100] *Connick v. Thompson,* 563 U.S. 51, 62, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011) (citing *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown,* 520 U.S. 397, 409, 117 S. Ct. 1382, 1390, 137 L. Ed. 2d 626 (1997)).

[101] *Cozzo v. Tangipahoa Parish Council-President Gov't,* 279 F.3d 273, 286 (5th Cir. 2002)(internal citations omitted).

[102] *Davidson v. City of Stafford, Texas,* 848 F.3d 384, 396 (5th Cir. 2017), *as revised* (Mar. 31, 2017) (citing *Peterson v. City of Fort Worth, Tex.,* 588 F.3d 838, 851 (5th Cir. 2009)).

[103] *Id.* ("The legal question thus presented is whether the 27 complaints on which Peterson relies are sufficient to establish a pattern of excessive force that can be said to represent official policy."

[104] *Jason v. Tanner,* 938 F.3d 191, 198 (5th Cir. 2019) (citing *Connick,* 563 U.S. at 62, 131 S.Ct. 1350.)

obligations under *Brady*.[105] In support of the "failure to train" claim, the Plaintiff proved he was fully exonerated of wrongdoing and that his conviction was reversed based on evidence that had been withheld by Orleans Assistant District Attorneys, in violation of *Brady*.   The Plaintiff also proved the Orleans District Attorney's Office had, on prior occasions, caused convictions to be overturned due to *Brady* violations.  The Supreme Court held the prior *Brady* violations were not sufficiently similar to put the District Attorney on notice of a particular defect in his training program.

The Plaintiff does not allege and cannot prove that LeBlanc, Griffin, or Cooley was on notice of sufficiently similar and numerous prior instances of errors in application of state statutes, which resulted in unconstitutional over-detentions.  Plaintiff's inability to meet his burden of proof is made even more difficult by virtue of the CARP process, which provides offenders a procedure for challenging their sentence computations.  Without evidence of the similarities between the circumstances of this case and the prior cases relied on by the Plaintiff, the Plaintiff cannot meet his burden of proving each supervisory official defendant was on notice of a particular shortcoming in Department policy.

Because the Plaintiff cannot meet his burden of proving notice, the Plaintiff also cannot meet his burden of proving that each Defendant responded to that actual knowledge with the requisite state of mind – indifference to the rights of the offenders in DPSC custody.

Furthermore, if we *assume arguendo* the Defendants had knowledge that mistakes in sentence computations could be made, which could result in an over-detention of a DOC inmate, the CARP process works to provide review of any complaints about time computations presented through the process and to correct those errors in a timely manner.[106]  The Plaintiff cites no law

---

[105] *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215.
[106] See La. Admin. Code Tit. 22, Pt. 1, §325(M) (DPSC Offenders housed in non-DPSC facilities).

that mandates an error-free sentence computation process under penalty of personal liability for policymakers. The Plaintiff also cites no precedent holding that it is objectively unreasonable for prison officials to rely on the administrative remedy procedure to identify and correct time computation errors.

All of the individual defendants are, for the foregoing reasons, entitled to qualified immunity from suit.

## VI.    State law claims are prescribed

In addition to being abandoned by virtue of the fact that the Plaintiff failed to proceed through CARP before filing suit, the state law claims can be dismissed with prejudice because they are prescribed. All of the state law claims are governed by a one-year prescriptive period, which "began to run on the date the Plaintiff was allegedly 'falsely imprisoned,'" i.e. July 10, 2017.[107] The Plaintiff alleges his release date was supposed to have been July 10, 2017.[108] The Plaintiff had until Tuesday, July 10, 2018 to file suit.[109] Plaintiff filed suit Wednesday, July 11, 2018.[110] Considering more than one year passed between the date the Plaintiff was allegedly "falsely imprisoned" and the day the Plaintiff filed suit, the Plaintiff's state law claims are untimely and must be dismissed with prejudice.

---

[107] *Thomas v. Gryder*, No. CV 17-1595-EWD, 2018 WL 4183206, at *5 (M.D. La. Aug. 31, 2018) (citing *Eaglin v. Eunice Police Dept.*, 2017-C-1875 (La. 6/27/18) —— So.3d ——, 2018 WL 3154744).
[108] Rec. Doc. 17, ¶34.
[109] See *Bourg v. Woods*, 09-628 (La. App. 5 Cir. 1/26/10), 31 So. 3d 1123, 1125 (citing La. C.C. art. 3454, 3456).
[110] Rec. Doc. 1.

## VII.    Conclusion

For the reasons explained herein, there is no genuine issue of material fact for trial and the Defendants are entitled to entry of summary judgment in their favor, dismissing all claims with prejudice and at the Plaintiff's cost.

Respectfully Submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

BY:    *s/Phyllis E. Glazer*
Phyllis E. Glazer (LSBA #29878) (Lead Counsel)
Assistant Attorney General

**Louisiana Department of Justice**
Litigation Division, Civil Rights Section
1885 North Third Street, 4th Floor
Post Office Box 94005 (70804-9005)
Baton Rouge, Louisiana 70802
Telephone:    225-326-6300
Facsimile:    225-326-6495
E-mail:        GlazerP@ag.louisiana.gov
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 6, 2020, the foregoing was filed electronically with the Clerk of Court by using the CM/ECF system.  Notice of this filing will be sent to all parties who participate in electronic filing by operation of the court's electronic filing system.

*s/Phyllis E. Glazer*
Phyllis E. Glazer (#29878)
Assistant Attorney General