## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

AUSTIN FREDERICK

CIVIL ACTION

VERSUS

18-682-SDD-RLB

SECRETARY JAMES W.
LEBLANC, *et al.*

### RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] filed by

Defendants, the State of Louisiana through the Department of Public Safety & Corrections

("DOC" or "DPSC," interchangeably), Secretary James M. LeBlanc, Angela Griffin, Teresa

Cooley, Mario Lewis, and D'Anna Lawton (collectively, "Defendants"). Plaintiff Austin

Frederick ("Frederick") filed an *Opposition*,[2] to which Defendants filed a *Reply*.[3]

Defendants also filed a *Supplemental Memorandum*,[4] to which Frederick filed a

*Supplemental Memorandum in Opposition*.[5] For the reasons that follow, the Court finds

that Defendants' *Motion* shall be DENIED, with the exception of the unopposed argument

for the dismissal of the 42 U.S.C. § 1983 claims against DPSC.

## I.    BACKGROUND

The procedural vagaries of Austin Frederick's case are complex, but the essential

facts are as follows: Frederick began serving a one-year sentence for possession of

cocaine on September 16, 2016.[6] On December 3, 2016, he was released to DOC's

parole supervision, having served enough time in custody under Louisiana's diminution

---

[1] Rec. Doc. No. 46.
[2] Rec. Doc. No. 58.
[3] Rec. Doc. No. 60.
[4] Rec. Doc. No. 68.
[5] Rec. Doc. No. 70.
[6] Rec. Doc. No. 17, p. 8.

1

of sentence statute, §15:571.3. On December 26, 2016, Frederick was arrested and subsequently received a 90-day sentence for a technical violation of his parole.[7] He was released back to parole supervision on March 22, 2017, then arrested again on May 26, 2017 and charged with possession of cocaine, possession of drug paraphernalia, and resisting an officer.[8] On June 20, 2017, Frederick revoked his parole.[9] In short, although he was arrested several times while on parole, Frederick contends that these arrests did not alter his "full term" date, the date when his original one-year sentence would be fully served.[10] Instead of honoring that original release date of July 16, 2017, Frederick alleges, DOC inaccurately recalculated his sentence several times and did not release him until October 26, 2017.[11]

In their *Motion for Summary Judgment*, Defendants first assert that Frederick's claims should be dismissed because they are barred by *Heck v. Humphrey* and its progeny, which bar § 1983 suits where a finding in the plaintiff's favor would necessarily imply the invalidity of his conviction or sentence. Next, Defendants contend that Frederick's state law claims are barred because he did not pursue his claim through the Corrections Administrative Remedy Procedure ("CARP"). Additionally, Defendants argue that all claims against the State of Louisiana through the Department of Public Safety & Corrections must be dismissed because DOC is not a "person" for purposes of § 1983. Lastly, Defendants insist that they are entitled to qualified immunity in their individual capacities, for two reasons: (1) because Frederick's right to release from custody was not

---

[7] Rec. Doc. No. 17, p. 8.
[8] *Id.*
[9] *Id.*
[10] *Id.* at p. 9. This date is not one year from the date Frederick began serving his one-year sentence because he was given credit for time served prior to the imposition of the sentence.
[11] *Id.*

2

clearly established prior to October 26, 2017 (the day he was released) and (2) because none of the Defendants' conduct was objectively unreasonable in light of clearly established law. After reviewing the briefs, the evidence, and the applicable law, the Court finds that Defendants' *Motion* shall be DENIED.

## II.    LAW AND ANALYSIS

### a.    Summary Judgment

In reviewing a party's motion for summary judgment, the Court will grant the motion if (1) there is no genuine issue of material fact, and (2) the mover is entitled to judgment as a matter of law.[12] This determination is made "in the light most favorable to the opposing party."[13] A party moving for summary judgment "'must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case.'"[14] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[15] However, the non-moving party's burden "'is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[16]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a

---

[12] FED. R. CIV. P. 56(a).

[13] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); 6 V. MOORE, FEDERAL PRACTICE 56.15(3) (2d ed. 1966)).

[14] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).

[15] *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

[16] *Willis v. Roche Biomedical Lab., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little*, 37 F.3d at 1075).

reasonable jury could return a verdict for the nonmoving party.'"[17] All reasonable factual inferences are drawn in favor of the nonmoving party.[18] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[19] "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiffs [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'"[20]

      b. *Heck*

In its *Ruling* on the *Motion to Dismiss* entered earlier in this case, this Court held that *Heck v. Humphrey* and the doctrine emerging therefrom does not bar Frederick's claims.[21] Defendants' *Motion for Summary Judgment* provides scarce, if any, reasons for the Court to reconsider this holding, merely reciting case law while reminding this Court that Supreme Court and Fifth Circuit precedent "is followed by this District."[22] However, Defendants' *Supplemental Memorandum* offers something new, urging the Court to apply *Heck* in light of a recent ruling from the Fifth Circuit: *Colvin v. LeBlanc.*[23]

James Colvin was sentenced to eighty years in prison after a 1983 jury conviction in Caddo Parish, Louisiana. In 1986, he escaped from the Louisiana State Penitentiary, only to be recaptured, sentenced to a new, lengthy prison term, and ultimately paroled in

---

[17] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[18] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[19] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[20] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).
[21] Rec. Doc. No. 41.
[22] Rec. Doc. No. 46-2, p. 6.
[23] 2 F.4th 494 (5th Cir. June 23, 2021).

2004.[24] Colvin then robbed a bank, for which he earned a new term of imprisonment. After he was transferred – without a valid detainer, he contended – from the United States Penitentiary in Lewisburg, Pennsylvania to the Elayn Hunt Correctional Center in Louisiana, Colvin "filed an Administrative Remedy Procedure, requesting immediate release and credit for time served in federal custody."[25] Colvin later alleged in his §1983 suit that, although a records clerk at Elayn Hunt initially changed his release date from January 1, 2052 to January 1, 2053 to properly credit him for the time he spent in federal custody, when he was again transferred to Rayburn Correctional Center, a different records clerk "reverted" his release date to 2052.[26]

Defendants claim that *Colvin* "unequivocally reaffirms that sentence computation challenges are barred by *Heck*."[27] This statement is at odds with the Court's view of the case. In fact, the Fifth Circuit appears to disagree that *Colvin* is a simple case of computation, noting that although the district court "characterized Colvin's claim as only involving the miscalculation of his release date . . . Colvin actually challenges two independent acts: (1) the "artificial enhancement" of his sentence, and (2) his illegal extradition."[28] On appeal, Colvin repackaged his "artificial enhancement" argument to instead complain that his release date was incorrect because he was not properly credited under Louisiana's good time statutes for the time he previously served in federal prison. Noting that this argument was waived because it was raised for the first time on appeal, the Fifth Circuit nevertheless held that "a § 1983 damages action predicated on the

---

[24] *Id*. at 496.
[25] *Id*.
[26] *Id*.
[27] Rec. Doc. No. 68, p. 1.
[28] *Colvin*, 2 F.4th at 499.

69176

sentence calculation issue is barred by *Heck* because success on that claim would necessarily invalidate the duration of his incarceration."[29] This is *dicta* and does not bind the Court. In any event, the Court is not persuaded that Colvin, an incarcerated individual seeking to hasten his release date by *thirty years,* is similarly situated to Frederick, whose complaint arises out of a roughly three-month period between July and October 2017 when, he alleges, his lawful sentence was fully served but he continued to be detained anyway.

Moreover, the Court finds that Defendants consistently misapprehend the nature of Frederick's claim. In the Court's view, Frederick's suit does not seek to invalidate his conviction or sentence because the essence of his complaint is that not that his sentence was invalid – he does not argue this. Instead, he asserts that *he was held beyond* the expiration of his admittedly valid sentence. While Frederick does allege that DOC miscalculated his release date, this allegation does not challenge the validity of his sentence as rendered by the sentencing judge. Frederick's claim arises *after* his lawful sentence had been served and DOC allegedly continued to detain him anyway. Overall, the Court finds that it would be misguided to apply *Heck* here, where the challenge is not directed at Frederick's conviction and sentence but rather DOC's procedures for calculating his release date and releasing him timely. In other words, Frederick contends that DOC failed to abide the court's lawful sentence by over detaining him.

The Court is not alone in this opinion. In *Traweek v. Gusman*, which this Court also discussed in its previous *Ruling* on this topic, the Eastern District of Louisiana declined to apply *Heck* in a case where

The constitutional violation [the plaintiff] advances here is that he was

---

[29] *Id.*

69176

imprisoned 20 days past his release date; he does not take issue with his criminal judgment of conviction or the sentence rendered, but, rather, challenges the constitutionality of the administration of his release after he had served his sentence. [The plaintiff] alleges that his jailers failed to timely release him once the legal basis to incarcerate him had expired by court order. The only conduct the factfinder will probe is that performed by jail officials in administering his release after his release date.[30]

The new *dicta* in *Colvin* is not sufficient to overturn this Court's previous conclusion. As to Defendants' argument that Frederick's claims are barred by *Heck*, their *Motion* is DENIED.

### c.  DPSC is not a "person" under §1983

Defendants argue, and Plaintiff concedes, that the Louisiana Department of Public Safety and Corrections ("DPSC") is not a "person" capable of being sued under 42 U.S.C. § 1983.[31] The Court agrees.[32] Accordingly, Frederick's §1983 claims against DPSC shall be dismissed with prejudice.

### d.  Qualified Immunity

Frederick sues each Defendant under 42 U.S.C. § 1983 for violations of his constitutional rights under the Fourteenth Amendment due process clause and Article I, Section 2 of the Louisiana Constitution, which "provides the same due process protections as ... the United States Constitution."[33] Because the Louisiana Constitution's due process guarantee is coextensive with that of the Federal Constitution, the qualified

---

[30] *Traweek v. Gusman*, 414 F. Supp. 3d 847, 859 (E.D. La. 2019).
[31] Rec. Doc. No. 46-2, p. 9; Rec. Doc. No. 58, p. 17-18 ("Plaintiff concedes that only the § 1983 claims against Defendant DOC should be dismissed").
[32] See *Hicks v. Dep't of Pub. Safety & Corr.,* No. CV 19-108-SDD-RLB, 2020 WL 428116, at *5 ("The Supreme Court has 'held that a State is not a 'person' against whom a § 1983 claim for money damages might be asserted.'" "This rule extends to 'arms of the state,' and to a state's 'officials acting in their official capacities.'" Thus, Plaintiff's § 1983 claims are barred against Defendants in their official capacity as they are not considered "persons" within the meaning of 42 U.S.C. § 1983")(internal citations omitted).
[33] *See Cripps v. La. Dep't of Agric. & Forestry*, 819 F.3d 221, 232 (5th Cir. 2016).

69176

immunity defense available to state officials sued under § 1983 applies with equal force to Frederick's federal and state constitutional claims.[34]

"Qualified immunity 'protects officers from liability for damages unless they violate clearly established law.'"[35] The United States Supreme Court has "mandated a two-step sequence for resolving government officials' qualified immunity claims."[36] First, a court must decide whether the facts that a plaintiff has alleged or shown constitute a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.[37]

As the Fifth Circuit has noted, "qualified immunity changes the nature of the summary-judgment burden, how and when the burden shifts, and what it takes to satisfy the burden."[38] In an ordinary summary judgment, the movant bears the initial burden to show that "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[39] However, "[w]hen a public official makes 'a good-faith assertion of qualified immunity,' that 'alters the usual summary-judgment burden of proof, shifting it to the plaintiff to show that the defense is not available."[25] "In other words, to shift the burden to the plaintiff, the public official need not show (as other summary-judgment movants must) an absence of genuine disputes of material fact and

---

[34] *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 482 (5th Cir. 1999); *Moresi v. State ex rel. Dep't of Wildlife & Fisheries*, 567 So. 2d 1081, 1093 (La. 1990).
[35] *Traweek v. Gusman*, No. CV 19-1384, 2021 WL 199387, at *2 (E.D. La. Jan. 20, 2021)(quoting Samuel L. Bray, *Foreword: The Future of Qualified Immunity*, 93 Notre Dame L. Rev. 1793, 1793 (2018)).
[36] *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).
[37] *Id*.
[38] *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 329 (5th Cir. 2020).
[39] Fed. R. Civ. P. 56(a).

entitlement to judgment as a matter of law."[40] When deciding a summary judgment motion involving qualified immunity, "[a] court decides whether summary judgment is appropriate by 'view[ing] the facts in the light most favorable to the nonmoving party and draw[ing] all reasonable inferences in its favor'. . ., then determining whether the plaintiff can prove a constitutional violation . . . that was clearly established. . .[41] With that in mind, the Court turns to the qualified immunity analysis.

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"[42] While a plaintiff need not find a case "directly on point, ... existing precedent must have placed the statutory or constitutional question beyond debate."[43] The Supreme Court instructs that the clearly established law "should not be defined 'at a high level of generality.'"[44] It "must be 'particularized' to the facts of the case."[45] The Supreme Court further instructs that, while the "clearly established right" at issue should be defined based on the specific context of a case, "courts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions."[46] Thus, the Fifth Circuit has held, "'drawing inferences in favor of the nonmovant' is especially important when determining whether there is clearly established law."[47]

---

[40] *Joseph on behalf of Est. of Joseph v. Bartlett,* 981 F.3d 319, 329–30 (5th Cir. 2020)(quoting *Orr*, 844 F.3d at 490 and citing *King v. Handorf*, 821 F.3d 650, 653–54 (5th Cir. 2016)).
[41] *Id*. at 330 (citing *Deville v. Marcantel*, 567 F.3d 156, 164 (2009)(per curiam)).
[42] *Mullenix v. Luna*, 577 U.S. 7, 11–12 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 663 (2012)).
[43] *Id.* at 12 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).
[44] *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *al–Kidd*, 563 U.S. at 742).
[45] *Id*. at 552 ((quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).
[46] *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).
[47] *Roque v. Harvel,* 993 F.3d 325, 335 (5th Cir. 2021).

69176

"The Fifth Circuit in *Porter v. Epps* instructs that there is a clearly established right to timely release from prison. There can be no serious dispute on this point."[48] In this case, Defendants argue that the relevant right should be framed more narrowly, as a right "to release from custody on July 10, 2017" – and Defendants further argue that this specific right is not clearly established because "no state court has held an error was made in Plaintiff's sentence computation."[49] The Court rejects this argument, as it improperly conflates the well-established right to timely release with a disputed factual issue in this case, namely, what date would have been "timely."[50] Although the relevant right must be defined in a manner particularized to the facts of the case, Defendants' framing goes a step too far. It would be absurd to demand that the plaintiff in an excessive force case prove a "right to be free from excessive force on Tuesdays," and it is equally absurd to suggest that Frederick must show he had a constitutional right to timely release *on a particular calendar day*. Though the reasonableness of Defendants' conduct in light of clearly established law may be at issue based on the record, there is simply no question that the right to timely release from prison is clearly established law.

---

[48] *Crittindon v. Gusman,* No. CV 17-512-SDD-EWD, 2020 WL 1862467, at *11 (M.D. La. Apr. 13, 2020).
[49] Rec. Doc. No. 46-2, p. 13.
[50] See *Tolan*, 572 U.S. 650, 657 (2014)("Courts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions").

69176

It beyond dispute that Austin Frederick enjoyed a clearly established right to timely release from prison. Based on the evidence before the Court, Frederick has also demonstrated a violation of that right. As of March 21, 2017,  Frederick's Master Record from DPSC indicated that his "full term date" (FTD in the lower right-hand corner of the record) was July 16, 2017:[51]

```
DATE: 03/21/17          DPS&C CORRECTIONS SERVICES        TIME: 15:3
AMENDED: 03/21/17             MASTER RECORD                  PAGE 1

-------------------------- D E S C R I P T I O N --------------------------

DOC #..: 00288755        CURRENT LOC: ST. CHARLES PP
NAME: FREDERICK, AUSTIN                   B/M   DOB......: 05/01/1964

SID NUMBER: 001390309    FBI NUMBER: 210465JA5    SOC.SEC....: 438392148
DRIVER LIC: 00000004830360 - LA                   STRIKE.....: NO
HGT.......: 6`02         WEIGHT....: 212          HAIR.......: BLACK
EYES......: BROWN        COMPLEXION: DARK         SHOE SIZE.: 130
******************** R E L E A S E   I N F O R M A T I O N ********************
DN                                                DNA: Y
OFFENDER CLASS: 03       GT ACT.: ACT 110         TEST DATE: 11/15/2016
WRED: 07/17/2014
PED: NOTELG             DS ...:                   FTD: 07/16/2017
                       ADJUSTED.: 03/22/2017
```

A subsequent Master Record, dated October 26, 2017, indicates that Frederick's release date was amended on September 15, 2017 and bears a new "full term date" of October 26, 2017:[52]

```
DATE: 10/26/17          DPS&C CORRECTIONS SERVICES        TIME: 08:49
AMENDED: 09/15/17            MASTER RECORD                  PAGE 1

-------------------------- D E S C R I P T I O N --------------------------

DOC #..: 00288755        CURRENT LOC: WINN CORRECTIONAL CE
NAME: FREDERICK, AUSTIN                   B/M   DOB......: 05/01/1964

SID NUMBER: 001390309    FBI NUMBER: 210465JA5    SOC.SEC....: 438392148
DRIVER LIC: 00000004830360 - LA                   STRIKE.....: NO
HGT.......: 6`02         WEIGHT....: 212          HAIR.......: BLACK
EYES......: BROWN        COMPLEXION: DARK         SHOE SIZE.: 130
******************** R E L E A S E   I N F O R M A T I O N ********************
DN                                                DNA: Y
OFFENDER CLASS: 03       GT ACT.: ACT 110         TEST DATE: 11/15/2016
WRED: 07/16/2013
PED: 07/14/2017         DS ...: 10/26/2017        FTD: 10/26/2017
                       ADJUSTED.: 10/26/2017
```

---

[51] Rec. Doc. No. 58-2, p. 2.
[52] *Id.* at p. 5.

69176

Without reaching the various arguments raised by the parties as to whether the recalculated date was correct under state law, the Court finds that these records on their face are evidence of overdetention. According to DPSC's own records, as of March, Frederick was to be released on July 16, 2017. Yet, the only subsequent records before the Court indicate that his sentence was not even recalculated until two months after his scheduled release date, on September 15, 2017. What was the basis for continuing to detain Frederick during that gap? Furthermore, what was the basis for the change in his full term date?

Frederick contends that his full term date was changed "without legal justification or authority,"[53] while Defendants counter that Frederick's parole revocation "*obviously* resulted in the new calculation of a discharge date."[54] Defendants do not explain why this recalculation was "obvious," especially in light of the law cited by Frederick, La. R.S. §15:574.9(F), which provides that upon parole revocation, the parolee "shall be returned to the physical custody of the Department of Public Safety and Corrections . . . and serve the remainder of his sentence as of the date of his release on parole, and any credit for time served for good behavior while on parole. The parolee shall be given credit for time served prior to the revocation hearing for time served in actual custody while being held for a parole violation . . ."[55] In the Court's view, the plain language of this statute does not suggest that a parole revocation would *necessarily* result in a new, later full term date.

Defendants also claim that Frederick's full term date changed when he was sentenced on the felony charges that caused his parole revocation, because "sentencing

---

[53] Rec. Doc. No. 58, p. 4.
[54] Rec. Doc. No. 46-2, p. 14 (emphasis added).
[55] La. R.S. § 15:574.9.

69176

on new felony charges would also, obviously, result in a new discharge computation."[56] Frederick rejects this argument as "blatantly false"[57] because his sentence on the new charges was time served and therefore, he argues, had no effect on his full term date. Defendants cite *Williams v. La. Dep't of Pub. Safety & Corr.,* an unpublished opinion by the Louisiana First Circuit Court of Appeal, for the proposition that Frederick "was not entitled to jail credit for time he spent in jail on a new felony charge."[58] However, as Frederick correctly notes, *Williams* was decided on a repealed version of La. R.S. §15:574.9, which has since been amended to provide that offenders "shall be given credit for time served prior to the revocation hearing for time served in actual custody. . ." This is the law that was in effect at the time of Frederick's parole revocation.

Notably, although Defendants dispute Frederick's interpretations of state law, they do not at any point "show their work" to demonstrate how DPSC arrived at October 26, 2017 as Frederick's newly-calculated full term date. Presented with two iterations of Frederick's Master Record indicating two different full term dates, the Court cannot, in the absence of evidence on this point, simply conclude that the later one was correct. By contrast, Frederick establishes that his full term date was changed almost two months after he was set to be released, as per the original full term date reflected in DPSC's records. Yet, he continued to be detained after his original full term date elapsed. In the absence of competent summary judgment evidence demonstrating that DPSC had legal authority to detain Frederick after July 16, 2017,  the Court finds that Frederick has shown a violation of a clearly established constitutional right. Therefore, the Court turns to the

---

[56] Rec. Doc. No. 46-2, p. 14-15.
[57] Rec. Doc. No. 58, p. 21.
[58] Rec. Doc. No. 46-2, p. 16.

69176

question of whether or not each Defendant's actions were objectively unreasonable in light of that clearly established law.

1)  Mario Lewis and D'Anna Lawton

Frederick avers that Lewis and Lawton were the DPSC employees who were "responsible for calculating the correct datee [sic] that Mr. Frederick should have been released."[59] He further asserts that Lewis and Lawton "recalculated [his] release dates on several occasions between his June 20, 2017 revocation and his October 26, 2017 release from prison."[60] Frederick argues that these Defendants erred because they "should have calculated his new release date and given him credit for the 65 days between his March 22, 2017 release until his May 30, 2017 arrest toward completion of his sentence."[61] Instead, he continues, Lewis and Lawton violated his rights by not giving him this credit, as well as credit "for the time between his May 26, 2017 arrest and his self-revocation on June 20, 2017 as required under Louisiana law."[62]

Defendants argue that such a decision was reasonable in light of La. R.S. § 15:571.5, which states that when "parole is revoked by the parole committee for violation of the terms of parole, the person shall be recommitted to the department for the remainder of the original full term, subject to credit for time served for good behavior while on parole." This is not especially persuasive given that Frederick's "original full term" was to expire on July 16, 2017, at least according to the Master Record generated by DPSC in March 2017.[63] So even if Lewis and Lawton relied upon §15:571.5 in recalculating

---

[59] Rec. Doc. No. 17, p. 6, ¶ 19, 20.
[60] *Id*. at p. 9, ¶ 31.
[61] *Id*. at p. 9, ¶ 32.
[62] *Id*., ¶ 33.
[63] Rec. Doc. No. 58-2, p. 2.

Frederick's sentence, it is not apparent how that reliance would have resulted in a new release date of October 26, 2017.

This matter is before the Court on summary judgment, but there is scarce, if any, evidence that demonstrates what Lewis and Lawton did or did not do when it comes to calculating Frederick's release date. Frederick's *Exhibit N*[64] contains a document that indicates it was "Computed by: M. Lewis" and shows a release date of October 26, 2017.[65] A rapsheet document, which states "Requested by: D'Anna Lawton," lists Frederick's criminal history and contains various hand-written notations, including one next to the charges that led to his parole revocation that says "Per JeffNet 10/26/17."[66] The second iteration of Frederick's DPSC Master Record states that it was amended on September 15, 2017.  In short, it is less than clear who changed Frederick's full term date and on what basis. The Court can scarcely conclude that a Defendant's conduct was objectively reasonable without knowing what that conduct was, nor can it accept as fact Frederick's conclusory statement that Lawton and Lewis (apparently acting in unison) "acted objectively unreasonable when they changed Mr. Frederick's full term date."[67]

Defendants also assert that "Plaintiff cites no law prohibiting . . . the recalculation of a prisoner's full term date after his parole is revoked. . ."[68] This is a straw man. Frederick does not challenge the fact that his sentence was recalculated; his complaint is that, in his view, the calculation was performed incorrectly. Again, on this topic, the record is murky. What credit did Lewis give or deny Frederick? Did he make an error in his

---

[64] Rec. Doc. No. 58-15.
[65] *Id*. at p. 11.
[66] *Id*. at p. 9.
[67] Rec. Doc. No. 58, p. 21.
[68] Rec. Doc. No. 60, p. 8.

69176

application of state statutes? What was Lawton's involvement? Frederick identifies a total of 95 days for which he contends he should have been credited – the 65 days that he spent out on parole, and the 25 days that elapsed between his arrest on new charges and his parole revocation.[69] Yet, he alleges that he was overdetained not for 95 days but for 102 days.[70] Apart from pointing out that the record demonstrates Frederick was credited with 69 days under "Act 792,"[71] Defendants do not establish the process by which they calculated Frederick's new full term date. The Court declines to sift through the voluminous record for evidence of how the calculations were made; after all, "[j]udges are not like pigs, hunting for truffles buried in briefs."[72] Overall, on this motion for summary judgment, Defendants have not brought forth competent summary judgment evidence establishing that there is no dispute as to Lawson and Lewis's conduct, let alone whether their conduct is shielded by qualified immunity.

  2) <u>LeBlanc, Griffin, and Cooley</u>

  These three Defendants are each sued in their individual capacities and under a theory of supervisory liability. In *Hicks v. LeBlanc*, the Fifth Circuit described the legal standards applicable to claims for supervisory liability under § 1983.

> A supervisory official may be held liable only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury. "In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." "A failure to adopt a policy can be deliberately indifferent when it is obvious that the

---

[69] Rec. Doc. No. 17, p. 9.
[70] Rec. Doc. No. 58, p. 8.
[71] Rec. Doc. No. 58-15, p. 12.
[72] *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003)(quoting *U.S. v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991)).

69176

likely consequences of not adopting a policy will be a deprivation of constitutional rights."[73]

Based on the record before the Court, LeBlanc, Cooley, and Griffin did not affirmatively participate in the acts leading to Frederick's alleged overdetention and are not individually liable on that basis. Frederick's *Opposition* to the *Motion for Summary Judgment* does not identify any direct participation by these Defendants in the events of Frederick's case.

Thus, the remaining theory of liability arises out of these Defendants' alleged implementation of unconstitutional policies and their alleged deliberate indifference to constitutional violations committed by their subordinates. Frederick argues that "each of the Defendants LeBlanc, Griffin, and Cooley were on notice that their practices caused DOC-sentenced prisoners to be detained beyond their release dates as a matter of course."[74] Frederick cites the 2012 Lean Six Sigma study, now a staple of overdetention litigation in Louisiana, as well as a bevy of deposition testimony from other overdetention cases involving these parties. The Court credits this evidence. However, in this particular case, as discussed *supra*, there is a dearth of evidence regarding the specific conduct of DPSC employees in this case that lead to Frederick's overdetention. The question of supervisory liability is heavily dependent on the nature of the conduct of the subordinate employees. In *Crittindon v. Gusman*, for example, this Court concluded that Secretary LeBlanc and another supervisory official at DPSC were not entitled to qualified immunity because they were deliberately indifferent to prisoners' clearly established right to timely release by failing to implement reforms to the "pre-classification" process.[75] In *Hicks v.*

---

[73] *Hicks v. LeBlanc*, 832 F. App'x 836, 841 (5th Cir. 2020).
[74] Rec. Doc. No. 58, p. 23.
[75] *Crittindon v. Gusman,* No. CV 17-512-SDD-EWD, 2020 WL 1862467, at *15 (M.D. La. Apr. 13, 2020).

69176

*LeBlanc*, the Fifth Circuit held that "LeBlanc could be held liable for *incompetent* over-detention, such as the failure to process a prisoner's release or immediately compute an inmate's sentence after being sentenced to time served. But it cannot be said that LeBlanc had notice that his employees were purposely disregarding sentencing orders out of retaliatory intent."[76] In *Traweek v. Gusman*, the Eastern District of Louisiana held that the question of "whether LeBlanc's complicity in establishing (and/or failing to correct) policies leading to such extensive violations of inmates' clearly established rights to timely release was objectively unreasonable under the circumstances" was a question "best left for trial."[77] The same is true here. It has not been established whether Mr. Frederick's detention resulted from a  simple error in computation, from misapplication of state statutes, from deficient DPSC policies, from absent DPSC policies, from purposeful and retaliatory conduct, or some other series of events. That being the case, the Court concludes that the question of LeBlanc, Cooley, and Griffin's entitlement to qualified immunity cannot be resolved on the record before it. Accordingly, Defendants' *Motion for Summary Judgment* dismissal of the claims against LeBlanc, Cooley, and Griffin shall be DENIED.

      e.  <u>Abandonment and Prescription of State Law Claims</u>

Defendants argue that Frederick's state law claims should be dismissed with prejudice because his "failure to initiate and complete the Corrections Administrative Remedy Procedure to challenge his sentence computation"[78] is fatal to those claims. Frederick calls this argument "blatantly wrong" and provides evidence that he did, in fact,

---

[76] *Hicks v. LeBlanc*, 832 F. App'x 836, 842 (5th Cir. 2020).
[77] *Traweek v. Gusman*, No. CV 19-1384, 2021 WL 199387, at *6 (E.D. La. Jan. 20, 2021), *reconsideration denied*, No. CV 19-1384, 2021 WL 493073 (E.D. La. Feb. 10, 2021).
[78] Rec. Doc. No. 46-2, p. 9.

69176

initiate the ARP process, both at Jefferson Parish Correctional Center and again at Winn Correctional Center after he was transferred there.[79] He attests as much in his Declaration, stating, "I sent a grievance to the Jefferson Parish Jail about this unconstitutional parole hold on or about September 8, 2017."[80] Frederick also attests that he filed an ARP grievance at Winn Correctional Center on September 25, 2017; in fact, he attaches a copy of that grievance.[81] Defendants bring forth an affidavit from Rhonda Z. Weldon, a DPSC paralegal, who attests that she reviewed DPSC's records and was "unable to locate an Administrative Remedy Procedure filed by Plaintiff."[82] This statement is called into question by another document produced by Frederick, entitled "Receipt of Administrative Rememdy [sic] Procedure Request:"[83]

WINN CORRECTIONAL CENTER
RECIEPT OF ADMINISTRATIVE REMEMDY PROCEDURE REQUEST

INMATE   Austin Frederick   DOC#   288755

Your ARP received in this office on   9/28/17   has been forward to the LDPS&C Headquarters for handling.   ARP request for transfer, time computation or work release are handled at headquarters level.   The request was forward to the La. Department of Public Safety and Corrections Secretary's Office on:   9/20/17
                                                                Date

Mona Heyse
Wardens Designee

---

[79] Rec. Doc. No. 58, p. 16.
[80] Rec. Doc. No. 58-3, p. 2, ¶ 12.
[81] Rec. Doc. No. 58-3, p. 4.
[82] Rec. Doc. No. 46-3, p. 1.
[83] Rec. Doc. No. 58-3, p. 7.

69176

At minimum, this document demonstrates that Frederick's ARP grievance was received by Winn officials and forwarded to DPSC. Frederick avers that "DOC never responded . . . even after he sent follow up letters following his release."[84] In their *Reply*, Defendants shift the goalposts and argue that it "is immaterial" whether Frederick initiated the ARP process. Clearly, the evidence before the Court demonstrates a disputed issue of material fact regarding the status of Frederick's ARP grievance within DPSC. As such, Defendants' *Motion for Summary Judgment* is DENIED as to their argument that Frederick abandoned his state law claims.

Defendants also argue that Frederick's state law claims are prescribed. The parties agree that Frederick's state law claims are governed by a one-year prescriptive period that began to run on the date he was allegedly falsely imprisoned. Frederick filed suit on July 11, 2018, less than one year after his July 16, 2017 release date elapsed and his overdetention began, so his claims are not prescribed. Defendants' basis for insisting that they are prescribed is an error in the *Amended Complaint* wherein Frederick identifies July 10, 2017 as the date his overdetention began;[85] if that were the relevant date, then his July 11, 2018 filing would indeed have been untimely. However, the evidence before the Court, surely weightier than Frederick's mere allegations, demonstrates that the relevant "full term date" was July 16, 2017, as discussed at length above. The Court declines to prioritize form over substance by relying on an allegation in a complaint instead of the competent summary judgment before it, which reflects that Frederick filed timely. Further, as Frederick notes, the filing of his ARP grievance in Winn Correctional

---

[84] Rec. Doc. No. 58, p. 16.
[85] Rec. Doc. No. 17, p. 3 ("Mr. Frederick was entitled to release from incarceration on July 10, 2017").

69176

Center suspended prescription pursuant to Louisiana Revised Statute 15:1172(E).[86] Defendants may dispute that DOC headquarters actually received the ARP, but the record demonstrates no genuine dispute as to whether it was filed and received at Winn on September 28, 2017. Accordingly, the Court concludes that Frederick's state law claims are not prescribed.

## III.   CONCLUSION

For the above reasons, Defendants' *Motion for Summary Judgment*[87] is hereby DENIED. However, the *Motion* is GRANTED with respect to Frederick's § 1983 claims against DPSC, which are dismissed with prejudice.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>September 28, 2021</u>.

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[86] "Liberative prescription for any delictual action for injury or damages arising out of the claims asserted by a prisoner in any complaint or grievance in the administrative remedy procedure shall be suspended upon the filing of such complaint or grievance and shall continue to be suspended until the final agency decision is delivered."
[87] Rec. Doc. No. 46.

69176