# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

AUSTIN FREDERICK

VERSUS

SECRETARY JAMES W. LEBLANC, *et al.*

CIVIL ACTION

18-682-SDD-RLB

## RULING

This matter is before the Court following the *Mandate* of the United States Court of Appeals for the Fifth Circuit.[1]  The Court previously granted in part and denied in part[2] the *Motion for Summary Judgment*[3] filed by Defendants, the State of Louisiana through the Department of Public Safety & Corrections ("DOC" or "DPSC," interchangeably), Secretary James M. LeBlanc ("LeBlanc"), Angela Griffin ("Griffin"), Teresa Cooley ("Cooley"), Mario Lewis ("Lewis"), and D'Anna Lawton ("Lawton")(or collectively, "Defendants"), which Plaintiff Austin Frederick ("Frederick") opposed.[4]

This is yet another case involving the alleged over detention of a Louisiana inmate beyond his release date, a systemic problem that has undisputedly plagued Louisiana jails and prisons for over a decade.[5]  The factual and procedural background of this case was set forth in detail in the Court's prior *Ruling*, and it is adopted herein by reference.[6]

Frederick claims that DOC employees Lewis and Lawton violated his federal and state constitutional rights by erroneously denying him an applicable credit and incorrectly calculating his release date several times while he was serving a one-year sentence in a

---

[1] Rec. Doc. 86.
[2] Rec. Doc. 74.
[3] Rec. Doc. 46.
[4] Rec. Doc. 58.
[5] *See Buchicchio v. LeBlanc*, 656 F.Supp.3d 643, 663 (M.D. La. 2023).
[6] Rec. Doc. 74.

DOC facility.[7]  Frederick claims that LeBlanc, Griffin, and Cooley are liable under the theory of supervisory liability based on their "alleged implementation of unconstitutional policies and their alleged deliberate indifference to constitutional violations committed by their subordinates."[8]  All individual Defendants asserted the defense of qualified immunity, and the Court denied Defendants' motion for summary judgment on the aforementioned claims.[9]  The Defendants filed an interlocutory appeal based, *inter alia*, on the Court's rejection of their assertion of the qualified immunity defense to these specific claims.

> On appeal, the Fifth Circuit found:
>
> Upon our review, it appears the district court misapplied the summary judgment standard in qualified immunity cases. Because the district court relied on the absence of evidence to find genuine disputes of material fact, we now conclude that we cannot adequately review the district court's ruling. Accordingly, we vacate and remand to permit the district court an opportunity to identify which facts in the summary judgment record Frederick may be able to prove at trial.[10]

The Fifth Circuit held that, while the Court cited the correct law, the Court failed to properly place the burden on the plaintiff, which is required at the summary judgment stage when the defense of qualified immunity has been asserted.[11]  Further, "[i]n considering whether Defendants' conduct was objectively unreasonable, the district court relied on the absence of evidence to find there were genuine disputes of material fact."[12]  Thus, the Fifth Circuit remanded the Court's "order denying Defendants Lewis and Lawton qualified immunity and denying Defendants LeBlanc, Griffin, and Cooley qualified immunity on the supervisory liability claims."[13]  The Court addresses these issues below.

---

[7] *Id.* at pp. 1-2, 14-16.
[8] *Id.* at p. 17.
[9] *Id.* at p. 21.
[10] Rec. Doc. 86, p.2.
[11] *Id.* at p. 8.
[12] *Id.*
[13] *Id.* at p. 11.

I.     APPLICABLE SUMMARY JUDGMENT STANDARD

In reviewing a party's motion for summary judgment, the Court will grant the motion if (1) there is no genuine issue of material fact, and (2) the mover is entitled to judgment as a matter of law.[14] This determination is made "in the light most favorable to the opposing party."[15] A party moving for summary judgment "'must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case.'"[16] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[17] However, the non-moving party's burden "'is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[18]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[19] All reasonable factual inferences are drawn in favor of the nonmoving party.[20] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely

---

[14] FED. R. CIV. P. 56(a).
[15] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); 6 V. MOORE, FEDERAL PRACTICE 56.15(3) (2d ed. 1966)).
[16] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).
[17] *Rivera v. Houston Indep. Sch. Dist.,* 349 F.3d 244, 247 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[18] *Willis v. Roche Biomedical Lab., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little*, 37 F.3d at 1075).
[19] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[20] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

how this evidence supports his claim."[21] "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiffs [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'"[22]

"Qualified immunity 'protects officers from liability for damages unless they violate clearly established law.'"[23] The United States Supreme Court has "mandated a two-step sequence for resolving government officials' qualified immunity claims."[24] First, a court must decide whether the facts that a plaintiff has alleged or shown constitute a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.[25]

As the Fifth Circuit has noted, "qualified immunity changes the nature of the summary-judgment burden, how and when the burden shifts, and what it takes to satisfy the burden."[26] In an ordinary summary judgment, the movant bears the initial burden to show that "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[27] However, "[w]hen a public official makes 'a good-faith assertion of qualified immunity,' that 'alters the usual summary-judgment burden of proof, shifting it to the plaintiff to show that the defense is not available."[25] "In other words, to shift the burden to the plaintiff, the public official need not show (as other

---

[21] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[22] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).
[23] *Traweek v. Gusman*, No. CV 19-1384, 2021 WL 199387, at *2 (E.D. La. Jan. 20, 2021)(quoting Samuel L. Bray, *Foreword: The Future of Qualified Immunity*, 93 Notre Dame L. Rev. 1793, 1793 (2018)).
[24] *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).
[25] *Id*.
[26] *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 329 (5th Cir. 2020).
[27] Fed. R. Civ. P. 56(a).

summary-judgment movants must) an absence of genuine disputes of material fact and entitlement to judgment as a matter of law."[28] When deciding a summary judgment motion involving qualified immunity, "[a] court decides whether summary judgment is appropriate by 'view[ing] the facts in the light most favorable to the nonmoving party and draw[ing] all reasonable inferences in its favor'. . ., then determining whether the plaintiff can prove a constitutional violation . . . that was clearly established. . ."[29] "The plaintiff bears the burden of negating qualified immunity, but all inferences are drawn in his favor."[30] In denying a summary judgment based on qualified immunity, the Court must explain what facts Frederick may be able to prove at trial.[31]

## II. ANALYSIS

### A. Defendants Lewis and Lawton

Following the Fifth Circuit's holding in *Porter v. Epps*, the Court previously determined that there is a clearly established right to timely release from prison,[32] and Frederick's right to timely release was violated. Thus, as to the claims against Lewis and Lawton, the Court must consider whether the Defendants' actions violated Frederick's right "to the extent that an objectively reasonable person would have known."[33]

The Court finds that Frederick has carried his burden of presenting sufficient competent summary judgment evidence to survive summary judgment as to Lewis and Lawton. Frederick submitted as exhibits DOC documents reflecting the changes to his

---

[28] *Joseph on behalf of Est. of Joseph v. Bartlett,* 981 F.3d 319, 329–30 (5th Cir. 2020)(quoting *Orr*, 844 F.3d at 490 and citing *King v. Handorf*, 821 F.3d 650, 653–54 (5th Cir. 2016)).
[29] *Id*. at 330 (citing *Deville v. Marcantel,* 567 F.3d 156, 164 (2009)(per curiam)).
[30] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citation omitted).
[31] *See Thompson v. Upshurt Cnty.*, 245 F.3d 447, 456 (5th Cir. 2001).
[32] Rec. Doc. 74, p. 10 (quoting *Crittindon v. Gusman*, No. CV 17-512-SDD-EWD, 2020 WL 1862467, at *11 (M.D. La. Apr. 13, 2020)).
[33] *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006)(citing *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)).

release date made by Lewis and Lawton[34] and supporting Frederick's argument that "Lewis and Lawton 'recalculated [his] release dates on several occasions between his June 20, 2017 revocation and his October 26, 2017 release from prison.'"[35] The Court considered these exhibits and determined that they constitute technical evidence of over detention.[36]

Defendants argued that Louisiana law and Frederick's new felony charges necessitated a new calculation, but the Court disagreed with Defendants' interpretation of both the facts and law.[37] Nevertheless, under the law, Defendants *could* have been both legally incorrect and still objectively reasonable. But Frederick has offered evidence that calls their objective reasonableness into question. First, Defendants' argument that Frederick's conviction on the new felony charges "obviously" resulted in a new discharge computation[38] is inexplicable in light of the "time served" sentence Frederick received for those new charges.[39] In *Hicks v. LeBlanc*, the Fifth Circuit held that "[a] reasonable DPSC employee … should have known to credit time served when calculating an inmate's release date, where the court ordered such credit to be considered."[40]

Further, Frederick attests he has no memory of being provided a master prison

---

[34] *See* Rec. Docs. 58-2 and 58-15.
[35] Rec. Doc. 74, p. 14 (quoting Rec. Doc. No. 17, p. 9, ¶ 31).
[36] *Id.* at pp. 11-12 (considering Rec. Doc. 58-2).
[37] *Id.* at p. 12.
[38] Rec. Doc. 46-2, pp. 14-15.
[39] Rec. Doc. 58-3, ¶¶ 13-14.
[40] 832 Fed. App'x 836, 840-841 (5th Cir.2020)(citing La. Code Crim. Proc. Ann. art. 883.1 ("The sentencing court may specify that the sentence imposed be served concurrently with a sentence imposed by a federal court or a court of any other state...."); La. Code Crim. Proc. Ann. art. 880 ("A defendant shall receive credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence."); *see also Boddye v. La. Dep't of Corr.*, 175 So. 3d 437, 441 (La. Ct. App. 2015) ("It is well settled that the determination of the sentence a defendant is to serve, and what, if any, conditions are to be imposed on that sentence, is made by the trial judge, not the defendant's custodian."); *Dorman v. Ward*, 718 So. 2d 474, 476 (La. Ct. App. 1998) (holding that where an inmate is convicted of a new felony in Florida while on parole supervision on a prior offense in Louisiana, the sentencing court may give credit for time served in Florida toward his Louisiana sentence for parole revocation)).

record by the DOC,[41] and the Court has been directed to no countervailing evidence in the record demonstrating that he was, in fact, provided with this document. Frederick also submitted evidence that he filed an administrative request procedure ("ARP") to question the alleged miscalculations of his release date and the denial of credit for time served,[42] but no action was ever taken, and at the time of the filing of Defendants' motion, no response to Frederick's ARP had issued, despite Frederick sending correspondence to DOC Headquarters inquiring about the status of his ARP.[43]

Based on the above, the Court finds there is sufficient summary judgment evidence from which the inference could be drawn by reasonable jurors that Defendants' conduct was objectively unreasonable, particularly where Frederick was not provided his master prison record, he was denied the ability to post bond,[44] and his ARP was ignored. A reasonable juror could conclude from this evidence that Lewis and Lawton could not explain or justify their calculations or denial of Frederick's credit for time served. Accordingly, Defendants' summary judgment motion as to Lewis and Lawton is denied.

### B. Defendants LeBlanc, Griffin, and Cooley

The Court previously found that there was no evidence supporting the individual liability of LeBlanc, Griffin, or Cooley, and summary judgment is granted in their favor as to this claim. However, the Court denied their summary judgment motion on the supervisor liability claim.

"A supervisory official may be held liable ... only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional

---

[41] *Id.* at ¶ 21.
[42] *Id.* at ¶ 18; pp. 4-8.
[43] *Id.* at ¶¶ 22-23.
[44] *Id.* at ¶¶

policies that causally result in the constitutional injury."[45] "In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates."[46]

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[47] "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[48] "Deliberate indifference requires a showing of more than negligence or even gross negligence."[49] "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity."[50]

Further, the "failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights."[51] Nevertheless, "[l]iability for failure to promulgate policy ... require[s] that the defendant ... acted with deliberate indifference."[52] The Fifth Circuit explained:

> To establish that a state actor disregarded a known or obvious consequence of his actions, there must be actual or constructive notice that

---

[45] *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)).
[46] *Id*. (quoting *Gates*, 537 F.3d at 435 (internal quotation marks and citation omitted)).
[47] *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).
[48] *Id*. (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998)).
[49] *Id*. (citing *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc)).
[50] *Id*. (quoting *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)).
[51] *Porter*, 659 F.3d at 446 (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)).
[52] *Id*.

> a particular omission in their training program causes ... employees to violate citizens' constitutional rights and the actor nevertheless chooses to retain that program. A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference, because without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. Without cabining failure-to-train claims in this manner (or, logically, failure-to-promulgate-policy claims), a standard less stringent than deliberate indifference would be employed, and a failure-to-train claim would result in *de facto respondeat superior* liability.[53]

Applying the standards set forth above, the Court finds that Frederick has presented sufficient evidence to survive summary judgment on the supervisory liability claim as to LeBlanc and Griffin. Frederick has submitted the deposition testimony of LeBlanc, Griffin, and the DOC 30(b)(6) representative Angela Whittaker, all of which establish that they have long been apprised of the widespread, systemic over detention problem in Louisiana as detailed in the 2012 Lean Sigma Six investigation and study.[54] Specifically, Griffin acknowledged in her deposition that she learned from this study that: " (1) DOC was failing to timely release over two thousand DOC-sentenced prisoners per year, by an average of 71 days' over detention per prisoner, (2) that implemented pilot programs were only projected to reduce these constitutional violations to 1500 per year with an average 60 days' over detention, and (3) that neither the study nor the pilot programs ultimately implemented by the Defendants addressed delays in transmission of pre-classification documentation from sheriffs to the DOC."[55] Frederick likewise submits the deposition testimony of numerous DOC employees in other over detention cases demonstrating a well-established pattern of deliberate indifference to both the underlying

---

[53] *Porter*, 659 F.3d at 447 (citations, alterations, and quotations omitted).
[54] *See* Rec. Docs. 58-4 (LeBlanc Depo.), 58-5 (Whittaker Depo.), 58-13 (Griffin Depo.).
[55] Rec. Doc. 58, pp. 23-24 (citing Rec. Doc. 58-13 at pp. 104, 110-111.

constitutional violations and the knowledge that policies and procedures were not in place to correct the deficiencies.[56] Frederick also provides a 2017 Louisiana Legislative Audit Report which found that:

> DOC does not have any policies, procedures, manuals, or standardized guidance that outlines the correct way to calculate release dates. This leads to inconsistent calculation methods. For example, we asked two DOC staff to calculate release dates on the same offender, and each staff used a different method to calculate the release date. The two results differed by 186 days.[57]

While the Court previously found a "dearth of evidence regarding the specific conduct of DPSC employees in this case,"[58] the evidence discussed above would allow a reasonable juror to draw the inference that LeBlanc's and Griffin's continuous failures to implement corrective policies constitute an intentional choice rather than negligence such that they could be liable for supervisor liability under § 1983.

As for Cooley, the Court finds that summary judgment is warranted in favor of Cooley on the supervisor liability claim. Frederick attempts to impute LeBlanc's and Griffin's knowledge to Cooley; however, he did not direct the Court to specific evidence of Cooley's role with the DOC or her specific knowledge of the systemic over detention problem in Louisiana jails. Accordingly, Defendants' summary judgment is granted as to Cooley but denied as to LeBlanc and Griffin on the supervisor liability claim.

## III. CONCLUSION

For the reasons set forth above, the Defendants' *Motion for Summary Judgment*[59] is granted in part and denied in part. Summary judgment is granted in favor of LeBlanc,

---

[56] Rec. Docs. 58-6, pp. 13-14, 20-21; 58-7, p. 54; 58-8, pp. 52-53; 58-9, p. 90.
[57] Rec. Doc. 58-10, p. 13.
[58] Rec. Doc. 74, p. 17.
[59] Rec. Doc. 46.

Griffin, and Cooley on Frederick's § 1983 individual liability claims; summary judgment is granted in favor of Cooley on Frederick's § 1983 supervisor liability claim.  The Motion is denied in all other respects.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this  18th day of January, 2024.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**